[No. 13625.    Department One. — November 6, 1890.]

## IN THE MATTER OF THE ESTATE OF CELEDONIO ORTIZ, DECEASED.

EXECUTORS AND ADMINISTRATORS — DUTY OF DOMICILIARY EXECUTOR — FOREIGN ASSETS — WILLFUL NEGLECT. — It is the duty of a domiciliary executor to gather in and account for the foreign assets of his testator to the extent of his conscious ability to do so, and the court of the domicile may compel him to account for willful neglect to perform such duty.

ID. — CONTROL OF FOREIGN ASSETS — DUTY TO ACCOUNT FOR AND DISTRIBUTE RESIDUUM — ANCILLARY ADMINISTRATION. — Where the will of a resident of this state expressly authorizes the executor to collect all of the assets of the testator, and he has taken domiciliary administration in this state, and ancillary foreign administration, and obtained control of foreign assets of the estate, he may be compelled by the court of the domicile to account for the residuum of the foreign assets, after deducting all proper demands and charges against them, and to distribute such residuum as domiciliary executor, although the ancillary administration of the foreign assets may not have been closed, if it appears that he might have closed it with ordinary diligence, and have had the residuum transferred to him in this state before he filed his final account, and has willfully neglected to do so.

ID. — TRAVELING EXPENSES — FOREIGN ADMINISTRATION. — Traveling expenses connected with the administration of foreign assets should be allowed out of those assets, and not out of the assets collected in this state.

APPEAL from an order of the Superior Court of the city and county of San Francisco settling the final account of an executor.

The facts are stated in the opinion of the court.

*Thomas I, Bergin,* and *Sullivan & Sullivan,* for Appellant.

The title of an executor or administrator does not *de jure* extend beyond the territory of the government which grants it. (Story's Conflict of Laws, secs. 512, 513, and cases cited.) Nor is he accountable, except in the forum from which he obtained his authority, for assets collected in a foreign state by virtue of his office. (Woerner on American Law of Administration, sec. 160, and cases cited.) Where different administrations are granted in different countries, that administration is deemed the principal or primary one which is granted in the country of the domicile of the deceased; yet each portion of the estate must be administered in the country in which possession of it is taken and held under lawful authority; and the administrator under a foreign grant has a right to hold the assets received under it against the home administrator, even after they have been remitted to this country. (2 Williams on Executors, sec. 1503; *Vaughan* v. *Northup,* 15 Pet. 5; 3 Redfield on Wills, sec. 31; Wharton's Conflict of Laws, sec. 616; Story's Conflict of Laws, sec. 518; *Harrison* v. *Mahorner,* 14 Ala. 834; *Worthy* v. *Lyon,* 18 Ala. 784; *Wright* v. *Phillips,* 66 Ala. 82, 85; *Brownlee* v. *Lockwood,* 20 N. J. Eq. 239, 254; *Selectmen* v. *Boylston,* 2 Mass. 384; *Succession of St. John,* 6 La. Ann. 192; *Cocks* v. *Varney,* 42 N. J. Eq. 514; *Magraw* v. *Irwin,* 87 Pa. St. 141; *In re Hughes,* 95 N. Y. 55, 62; *Hedenberg* v. *Hedenberg,* 46 Conn. 37; 33 Am. Rep. 10.) The accountability of the administrator for all assets received under appointment in one jurisdiction should be limited to the same local jurisdiction. (*Fay* v. *Haven,* 3 Met. 116; *Sherman* v. *Page,* 85 N. Y. 128; *Aspden* v. *Nixon,* 4 How. 467, 497; *McLean* v. *Meek,* 18 How. 16; *Aperson* v. *Bolton,* 29 Ark. 418, 435; *Equitable Life Ins. Co.* v. *Vogel,* 76 Ala. 441, 446; 52 Am. Rep. 344; *Grant* v. *Reisse,* 94 N. C. 720, 729; *Gravely* v. *Gravely,* 25 S. C. 720, 729; 60 Am. Rep. 478;

*State* v. *Osborn*, 71 Mo. 86.) The only mode of reaching foreign assets in the domiciliary jurisdiction is to require their transmission after all the claims have been duly ascertained or settled. (*Gravely* v. *Gravely*, 25 S. C. 720; 60 Am. Rep. 478.) The residue of the foreign estate cannot be determined until the foreign executor has submitted his accounts to the forum of his appointment, and such accounts and all claims of creditors have been determined by that forum. (Wharton's Conflict of Laws, sec. 619; Story's Conflict of Laws, sec. 518; Williams on Executors, 1503, 1504.)

*Smith, Wright & Pomeroy*, and *John A. Wright*, for Respondents.

A domiciliary executor or administrator is bound to take reasonable means to obtain control of foreign assets, and if he has them in his active control, he is chargeable as for the property or its proceeds. (Schouler on Executors and Administrators, sec. 175.) While the authority of an executor or administrator does not generally extend *de jure* outside of the territory which appointed him, his jurisdiction to obtain assets abroad has been recognized in many sovereignties. (*Schultz* v. *Pulver*, 11 Wend. 364; *Vroom* v. *Van Horne*, 10 Paige, 649; 42 Am. Dec. 94; *Kansas Pac. R'y Co.* v. *Cutler*, 16 Kan. 568; *People* v. *Whithed*, 49 Vt. 187; *Kendrix* v. *Rieman*, 6 Neb. 516; *Illinois, Wabash etc. R'y* v. *Shackett*, 10 Ill. App. 104; *Denny* v. *Faulkner*, 22 Kan. 568; *Dunlap* v. *McFarland*, 25 Kan. 488; *Hicock* v. *Frank*, 102 Ill. 660; *Rapp* v. *Matthias*, 35 Ind. 332; *Brown* v. *San Francisco Gas Light Co.*, 58 Cal. 426.) He has title to all assets of the decedent, and if he actually receives assets from abroad, they are subject to administration. (*Petersen* v. *Chemical Bank*, 32 N. Y. 43; 88 Am. Dec. 298; *Parsons* v. *Lyman*, 20 N. Y. 103; *Middlebrook* v. *Merchants' Bank*, 41 Barb. 481; *Embry* v. *Miller*, 1 A. K. Marsh. 222; 10 Am. Dec. 732; *Wilkins* v. *Ellett*, 9

Wall. 740; *Wilkins* v. *Ellett*, 108 U. S. 256.) It is the duty of a domiciliary executor to account at the domiciliary jurisdiction for every part of the testator's assets received by him, and not accounted for in a foreign jurisdiction. (*Estate of Butler*, 38 N. Y. 397; *Schultz* v. *Pulver*, 3 Paige, 183; 11 Wend. 363; *Sherman* v. *Page*, 85 N. Y. 123; *Van Bokkelen* v. *Cook*, 5 Saw. 589.)

VANCLIEF, C. — This is an appeal by the executor of said estate, Vicente Cagigal Pezuela, from an order of the superior court of the city and county of San Francisco settling his final accounts. The deceased, a native of Spain, died in Spain on the fifth day of April, 1887, leaving a will executed in Spain according to the laws of that kingdom, and also in compliance with the laws of this state. At the time of his death he was a resident of the city and county of San Francisco, in this state, where he left property of the value of about ninety-seven thousand eight hundred dollars. He also left personal property in Spain of the value of about fifteen thousand dollars, and one half of a house and lot, and also left property in Mexico. The will disposed of all his property to his seven children and four grandchildren, and appointed the appellant (who was his son-in-law, and a native and resident of Spain) executor, without bond or other security for the performance of the trust. There was no evidence of the laws of Spain, except the testimony of the appellant, who said he was not a Spanish lawyer, but testified that no other letters testamentary than a duly authenticated copy of the will were required by the laws of Spain to authorize him to administer the Spanish assets of the estate, although he would be required to render a final account to a Spanish tribunal, in order to be discharged from his trust. The will authorizes the executor to take possession of all kinds of property, credits, claims, and shares; to liquidate all accounts, and to approve them or not, as he sees fit; to

claim, receive, collect, or pay whatsoever shall be owing the estate, or due by the same, of any nature whatsoever, wheresoever situated, giving and signing therefor the proper vouchers; to compound or settle differences which may arise, or submit them to friendly arbitration; to sell or exchange what may be deemed absolutely necessary, receiving the consideration therefor; and when exchanging, to make up any difference. In all matters in which the executor cannot personally act, he may give power of attorney, general or special, " with power of revocation and appointment of new attorneys in fact, and to the formation of an inventory, appraisement, accounts, and partition, carrying out said changes by themselves, without submitting or reporting the same to any tribunal of justice, this being expressly prohibited "; basing said prohibition on his confidence that his executor will do nothing but what is just.

The appellant accepted the trust; and, having received from the proper officers of Spain duly authenticated copies of the will, and a proper certificate of the death of the testator, he proceeded immediately to collect and take possession of all that part of the assets of the estate which were then in Spain, and converted all the personal property into money. He then, with his family, removed to this state, for the purpose of residing here while administering the California assets. He arrived in California in June, 1887, and on the twenty-second day of that month filed in the office of the clerk of the superior court of the city and county of San Francisco an authenticated copy of the will, which was afterwards admitted to probate by that court, and the appellant was appointed executor, and he qualified to act as such on the twenty-sixth day of September, 1887.

Thus he became the domiciliary executor of the will, and at the same time was invested with the character of ancillary executor of the assets in Spain. On October 17, 1887, in obedience to section 1443 of the Code of

Civil Procedure, he filed an inventory of all the property of the estate, including that situate in Spain. On February 13, 1889, the appellant filed his final account, in which he failed to charge himself with the assets in Spain, and prayed that the account be settled and allowed, and that the residue of the estate be distributed. In due time, two of the devisees and legatees named in the will filed objections to the account, on several grounds, but principally on the ground that the executor had failed to charge himself with the assets of which he, in his character of ancillary administrator, took possession in Spain. It appears that all the devisees resided in California and Mexico, and that all were represented in the proceedings in the superior court. After hearing the contest, the court charged the executor with $9,847.29, which it found to be the residuum of the Spanish assets after deducting all proper demands and charges against the estate in Spain. The court also disallowed three small charges of the executor for traveling expenses from San Francisco to the city of Hermosillo, in Mexico, amounting to $315.

1. Counsel for appellant contended that the court erred in charging the executor with the residuum of the Spanish assets, for the alleged reason that the administration of those assets had not been closed in Spain. This presents the principal question, and the only question of any difficulty to be decided. The evidence of the facts upon which the court acted consists of the will, petitions, and inventories filed by the executor, and his testimony at the trial, and on a former occasion. The executor was examined and cross-examined at great length, and it is impracticable to epitomize his testimony by stating the mere substance of it so as to show its full effect and bearing upon his motives and intention.

I think, however, that his testimony, in connection with the documentary evidence, substantially tends to prove and is sufficient to justify findings of the follow-

ing facts: 1. That the residuum of the assets in Spain had been under his active control, and at his disposal, as the domiciliary executor, during the term of at least six months before he filed his final account, though not actually separated from that part of such assets which may have been necessary to discharge the demands against the estate in Spain and the expenses of administration there, which, however, could not have exceeded the value of the assets left in his hands, in his character of ancillary executor, for the purpose of paying such demands and expenses; 2. That he could have had the residuum with which he was charged transferred to him in this state at any time within six months before the filing of his final account, by simply drawing for it upon his brother, whom he had authorized to act for him in all matters pertaining to the estate in Spain, and who had on deposit, in a bank there, subject to appellant's order, proceeds of the estate in Spain, amounting to fifteen thousand dollars; 3. That, with ordinary diligence in the discharge of the duties of his trust, the appellant might have had the administration of the estate in Spain closed, and the residuum thereof transferred to him in this state, before he filed his final account, but that he willfully refused to have this done, intending not to account for or to distribute that residuum in this state, but to account for and distribute it, if at all, in Spain.

It is strenuously contended that the lower court assumed jurisdiction over the appellant and dealt with him in his character of ancillary executor on the estate in Spain, and not merely as domiciliary executor; but I think this is a mistake. The court dealt with him only as the principal domiciliary executor, and only held him responsible for what he should have charged himself with in his final account here. Upon the facts which the court was justified in finding, the case against him appears to be quite as strong as it would have been if his brother had been the ancillary executor of the estate in

Spain, and he had willfully refused or neglected to procure a transfer of the residuum from his brother, as such foreign executor, to himself, knowing that, with ordinary diligence, or by mere demand, he could do so.   There is no complaint that he was charged with more than what would necessarily be the residuum after satisfying all lawful demands in Spain; nor is any reason suggested why, upon the settlement of his final account in Spain, the Spanish tribunal will not credit him with all that he has been required to account for and distribute in this state.   There is no question here as to the estate in Mexico.   For aught that appears, that portion of the estate has been administered and distributed to the satisfaction of all concerned.

I think the law applicable to the facts is correctly stated by Professor Schouler in his late treatise on Executors and Administrators (2d ed., 1889, sec. 175), as follows: "The earlier rule, frequently asserted in England, in one loose form or another, is, that assets in any part of the world shall be assets for which the domestic executor or administrator is chargeable; the practical effect being to enjoin upon the principal personal representative the duty of procuring, so far as foreign law and the peculiar circumstances will permit, personal assets wherever situated, realizing the bulk of the estate of his decedent as best he may, gathering in the property as one who represents the whole fortune, and having gathered it, account to those interested accordingly.

"Some of the judicial expressions on this point, to be sure, import too onerous a responsibility on the representative's part; and Mr. Justice Story has pointed out the fallacy of holding a domestic executor or administrator answerable for foreign property, which it is admitted that he can neither collect nor sue upon, nor compel its payment or delivery to himself, by virtue of his domestic appointment,— foreign property, we may add, of whose existence, or of the grant of foreign ad-

ministration for realizing it as assets, he may be quite unaware. And yet, to let external assets knowingly escape his control, and be lost to the estate, when with reasonable diligence they might have been procured, seems a plain dereliction of duty in the principal or domiciliary representative, whose function, as rightly understood, is to grasp the whole fortune, as the decedent did during his life, save so far as the obstructive law of foreign *situs*, or the limitations of his own appointment, may restrain him.

"If, therefore, assets cannot be collected and realized for the benefit of the estate without a foreign ancillary appointment, the executor or administrator of the decedent's last domicile ought, so far as may be consistent with his information, the means of the estate at his disposal, and the exercise of a sound discretion, to see that foreign letters are taken out, and that those assets are collected and realized, and the surplus transmitted to him. If, as frequently happens, the domestic representative may collect and realize such property in the domestic jurisdiction, as by selling negotiable bonds, bills, notes, or other securities, payable abroad, or by delivering bills of lading or other documents of title (indorsing or assigning by acts of his own, which would be recognized in conferring the substantial title in such foreign jurisdiction), or otherwise, by effectually transferring property of a chattel nature situated or payable elsewhere, which is capable, nevertheless, of being transferred by acts done in the domestic jurisdiction, he should be held accountable for due diligence as to such net assets; and so, too, he may enforce the demand against the debtor, without resort to the foreign jurisdiction. If, however, foreign letters and an ancillary appointment at the *situs* be needful or prudent in order to make title, and to collect and realize such assets, the principal representative should perform the ancillary trust, or have another perform it, observing due dili-

gence and fidelity, according as the laws of the foreign jurisdiction may permit of such a course; and if, in accordance with those foreign laws, a surplus be transmitted to the principal and domiciliary representative, or otherwise transferred, so as to be held by him in such capacity for payment and distribution, he will become liable for it accordingly.

" Whether, then, the principal or domiciliary representative be required, *pro forma*, or not, to include in his inventory assets which come to his knowledge, either situate in the state or country of principal and domiciliary jurisdiction, or out of it, his liability as to assets of the latter sort depends somewhat upon his means of procuring them, and the fact of an ancillary administration in the *situs* of such assets. In any case, he is bound to take reasonable means, under the circumstances, for collecting and realizing the assets out of his jurisdiction; nor is his liability a fixed, absolute one, but dependent upon his conduct, and it is getting the foreign assets into his active control that makes a domestic representative chargeable as for the property or its proceeds, rather than upon the duty of pursuing and recovering such assets. If assets situated in another jurisdiction come into the possession of the executor or administrator in the domiciliary jurisdiction, by a voluntary payment or delivery to him, without administration there, it follows that he should account for them in the domiciliary jurisdiction whose letters were the recognized credentials in the case. And it is held in several American cases, consistently with this rule, that, no conflicting grant of authority appearing, the domiciliary appointee of another state may take charge of and control personal property of the deceased in the state of its *situs*." (See also *Wilkins* v. *Ellett*, 9 Wall. 741, and *Van Bokkelen* v. *Cook*, 5 Saw. 589.)

The authorities cited by appellant's counsel seem not inconsistent with the above extract from Professor

Schouler's work.   None of them denies the duty of the domiciliary executor to gather in and account for the foreign assets to the extent of his conscious ability to do so, nor the consequent and corresponding authority of the court of the domicile to compel him to account for willful neglect to perform such duty.   All the authorities agree that the residuum of the foreign assets must finally be collected and distributed by the domiciliary executor.

2. As to the disallowance of the three items of traveling expenses, it is to be observed that, as they pertained solely to the administration of the estate in Mexico, they should be paid from that part of the estate, and not from the estate in California.   If those charged may be allowed here, why may not all the expenses of administration, both in Mexico and Spain, be charged to the California estate?   I think the order appealed from should be affirmed.

GIBSON, C., and HAYNE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the order appealed from is affirmed.

Hearing in Bank denied.