this stone was pointed out to him by Miller, who owned the adjoining premises on the east, as the southeast corner, that he afterward set the post for the purpose of preserving the location of what he believed to be the northeast corner of the lot, and he supposed the line was where the old fence stood. It seems clear that the conveyance was made with reference to physical monuments. It affirmatively appears that it was made upon an actual view of the premises by the parties to the conveyance, and it was early held that even courses and distances must give way to natural or artificial monuments (Wendell v. People, 8 Wend. 183, 190, 22 Am. Dec. 635), and that is now the well-settled rule (Burke v. Henderson, 54 App. Div. 157, 66 N. Y. Supp. 468; Smith v. Stacey, 68 App. Div. 521, 73 N. Y. Supp. 1022; Herse v. Mazza, 100 App. Div. 59, 91 N. Y. Supp. 778).

The authorities cited in the prevailing opinion do not seem to me applicable. In each of those cases the attempt was made to change the effect of the conveyance by parol evidence where the boundary lines of the premises were established without any ambiguity by the conveyance itself. That principle does not infringe upon the rule heretofore adverted to, for the boundary line could not be located with certainty by the Williams map, but depended upon the monuments which had been established and recognized as the easterly boundary line.

I think the judgment should be affirmed.

ROBSON, J., concurs.

---

(142 App. Div. 377.)

In re CUMMINGS' ESTATE.

(Supreme Court, Appellate Division, First Department.　January 6, 1911.)

1. EXECUTORS AND ADMINISTRATORS (§ 518*)—CHARACTER.
　　One is a domiciliary, though designated an ancillary, executor, where testator died a resident of this state and his will ordered the residue of his estate remitted to such executor.
　　[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2299–2309; Dec. Dig. § 518.*]

2. TAXATION (§ 878*)—TRANSFER TAXES—LAWS GOVERNING.
　　Trusts attempted to be created by a resident's will having been declared invalid, any transfer tax assessed should be based on the laws of the state, though the will was proved elsewhere.
　　[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1700, 1701; Dec. Dig. § 878.*]

3. CONSTITUTIONAL LAW (§ 46*)—JUDICIAL PROCEEDINGS IN ANOTHER STATE—PROOF.
　　One cannot invoke the full faith and credit clause of the federal Constitution on bare allegations of conclusions on information and belief.
　　[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 43–45; Dec. Dig. § 46.*]

4. JUDGMENT (§ 949*)—JUDICIAL PROCEEDINGS IN ANOTHER STATE—PLEADING.
　　Where respondent in a transfer tax proceeding relied on judicial proceedings in another state, it should have annexed exemplified copies of the proceedings and decree for which faith and credit were claimed;

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and, until such proof, the State Comptroller was not bound to either attack the jurisdiction of the foreign court or prove the foreign law.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1800; Dec. Dig. § 949.*]

5. EXECUTORS AND ADMINISTRATORS (§ 513*)—DECREE FOR SETTLEMENT—EFFECT.

A decree for final settlement as to part of an estate, not preceded by a decree forever barring all demands, does not of itself bar demands of nonresidents.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 2280; Dec. Dig. § 513.*]

6. EXECUTORS AND ADMINISTRATORS (§ 517*)—FOREIGN ASSETS—ADMINISTRATION.

California courts had jurisdiction to administer California property of a New York decedent in either original or ancillary proceedings.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2297, 2298; Dec. Dig. § 517.*]

7. JUDGMENT (§ 822*)—CONCLUSIVENESS OF FOREIGN JUDGMENT—DOMICILIARY ADMINISTRATION—SITUS.

The fact that domiciliary administration is in the state, as affecting the right to impose transfer taxes, cannot be changed by an adjudication in another state of decedent's residence there.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1496–1500; Dec. Dig. § 822.*]

8. JUDGMENT (§ 825*)—FOREIGN JUDGMENT—DECREE FOR DISTRIBUTION—CONCLUSIVENESS.

A decree in California for distribution of California property of a nonresident decedent was conclusive only upon the res; the distributees taking title to the res, good as against any one claiming as distributee.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1451; Dec. Dig. § 825.*]

9. TAXATION (§ 856*)—TRANSFER TAXES—ASSESSMENT.

The right to impose a transfer tax on a decedent's estate is to be determined as of his death.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1673; Dec. Dig. § 856.*]

10 TAXATION (§ 856*)—TRANSFER TAXES—RIGHTS OF STATE.

The state's right, accruing on a decedent's death, to impose a transfer tax on his estate, cannot be affected by subsequent acts of the parties.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1673; Dec. Dig. § 856.*]

11. JUDGMENT (§ 822*)—TRANSFER TAXES—JUDICIAL PROCEEDINGS IN ANOTHER STATE—EFFECT.

In a proceeding to impose a transfer tax on a resident decedent's estate, the state is not bound by a decision in another state, in a proceeding to which it was not a party, that decedent resided there and that his personalty was distributable according to the laws there.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1496–1500; Dec. Dig. § 822.*]

12. JUDGMENT (§ 951*)—TRANSFER TAXES — JUDICIAL DECISIONS IN ANOTHER STATE.

To bar the state from imposing a transfer tax on a resident decedent's estate on account of a decree in a proceeding in another state, the law of that state and jurisdiction of that court should be shown.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1808–1812; Dec. Dig. § 951.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

13. DESCENT AND DISTRIBUTION (§ 5*)—LAWS GOVERNING.

　　The personal estates of decedents, wherever situated, devolve according to the law of decedent's domicile, which courts of other states cannot disregard.

　　[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 19–22; Dec. Dig. § 5.*]

14. TAXATION (§ 867*)—TRANSFER TAXES—JURISDICTION.

　　Jurisdiction to bar another state from assessing a transfer tax on a decedent's estate must depend upon the fact of residence.

　　[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1681–1684; Dec. Dig. § 867.*]

15. EXECUTORS AND ADMINISTRATORS (§ 513*)— TRANSFER TAXES — EFFECT OF FINAL SETTLEMENT.

　　Transfer taxes are not among the claims affected by a decree of final settlement.

　　[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 2280; Dec. Dig. § 513.*]

16. EVIDENCE (§ 35*)—JUDICIAL NOTICE—STATUTES AND DECISIONS OF OTHER STATES.

　　Judicial notice cannot be taken of statutes and decisions of another state.

　　[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 35, 51; Dec. Dig. § 35.*]

　　Ingraham, P. J., dissenting.

Appeal from Surrogate's Court, New York County.

In the matter of the transfer tax on the estate of George W. Cummings, deceased. From an order of the Surrogate (63 Misc. Rep. 621, 118 N. Y. Supp. 684), reversing a prior order and remitting the report to an appraiser, the State Comptroller appeals. Reversed, and proceedings remitted.

This is an appeal by the Comptroller of the state from an order made by the surrogate reversing a prior order assessing a transfer tax upon the estate of George W. Cummings, and remitting the report to an appraiser with directions to make and file his report, excluding from the taxable assets of the estate $101,542.45, the value of said defendant's property situated in California.

George W. Cummings died on August 28, 1904, at Banff, Northwest Territory, Dominion of Canada. He left a will in which he devised and bequeathed to the Farmers' Loan & Trust Company of the city of New York, state of New York, "all my real and personal property by whatever right or title held and owned by me, and wherever situated, except as hereinafter qualified and limited, but in trust, however, for the purposes and uses hereinafter expressed and appointed." He further provided: "I hereby appoint the Merchants' Loan & Trust Company of the city of Los Angeles, the executor of so much of this, my will, as relates to the property of which I may die possessed in the state of California, and direct that the same shall be disposed of as soon after my death as it may be thought advisable and to the best interest of my estate, and after paying any debts I may owe in the state of California and the legacies out of the proceeds of the sale of residence herein provided for, it shall turn over to the trustees hereinbefore named, the Farmers' Loan & Trust Company of New York, the remainder thereof. * * * I' hereby appoint my said trustee, the Farmers' Loan & Trust Company aforesaid, executor also of this will, to administer the property of which I may die possessed in the state of New York or elsewhere, subject only to the authority of my California executor as hereinbefore given and limited."

This proceeding was begun by the filing of a petition by the Farmers' Loan

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

& Trust Company, the ancillary executor, praying for the appointment of an appraiser to fix tax herein. That petition was dated April 10, 1905, and set up that petitioner is the ancillary executor of George W. Cummings, deceased; that the said decedent departed this life on or about the 28th day of August, 1904, at Banff, Northwest Territory, Dominion of Canada; that decedent was a resident of Los Angeles; that ancillary testamentary letters on the estate of said deceased were on the 3d of January, 1905, issued to petitioner by the Surrogate's Court in the county of New York; that, as your petitioner is informed and believes, the property of said decedent or some portion thereof or some interests therein is or may be subject to payment of the tax imposed by law in relation to taxable transfers. It then sets up the names of the persons interested in the estate and it prays for an appraiser.

The appraiser reported on October 20, 1908: "I appraised the estate of George W. Cummings, deceased, subject to tax within the state of New York, at its fair market value on the 28th day of August, 1904, the day of his death, as follows: Personal estate within the state of New York" at $82,659.55, and the "personal estate outside of New York" at $101,574.45. Real estate, $206,-250. Gross estate, real and personal, $185,634.95, subject to deductions of $55,765.33. Net estate, real and personal, $129,889.33. "I further report that George W. Cummings died on the 28th day of August, 1904, a resident of the city, county, and state of New York, leaving a last will and testament. a copy of which is hereto annexed, which was duly admitted to probate by the superior court of California, county of Los Angeles, on or about October 4, 1904, and letters testamentary were issued out of said court to the Merchants' Trust Company, and that thereafter, and on the 3d of January, 1905, ancillary letters testamentary were issued out of the Surrogate's Court of the county of New York. As appears from the affidavit hereto annexed, in a proceeding had in the superior court of California, it was adjudged, among other things, that, for the reasons therein stated, the trusts attempted to be created by the decedent's will were invalid, and, in accordance with said decree, distribution was directed to John Cummings, the father of the decedent, as his only heir at law." He then reported that he appraised the estate subject to tax at its fair market value on the 28th of August, 1904, the date of his death, as follows: The Farmers' Loan & Trust Company, as ancillary executor, for the benefit of the persons of the 1 per cent. class, entire estate, $129,869.33.

The president of the Farmers' Loan & Trust Company submitted an affidavit verified May 18, 1908, setting up the date and place of death of Mr. Cummings, as he was informed and believed, "being at the time of his death a resident of New York, N. Y.," and, after the usual statements in such proceedings, stated:

"An action was brought by the Farmers' Loan & Trust Company, as ancillary executor of the last will and testament of George W. Cummings, deceased, against John Cummings, and others, for the purpose of determining the validity and construction of said will. Said action was duly tried on the 24th day of December, 1907. An opinion was handed down by * * * one of the justices of the Supreme Court, wherein he determined that said George W. Cummings was a resident of the state of New York, and therefore, under the laws of said state, 'the trusts attempted to be created therein for the benefit of Samuel A. Cummings,' and others named, and of which the Farmers' Loan & Trust Company was named· as trustee, were invalid, ánd as to his residuary estate the testator died intestate. John Cummings, the father of testator, is his only heir and next of kin and the only person entitled to notice herein. * * * By the terms of testator's will, as will appear by the copy thereto attached, testator appointed the Merchants' Trust Company of the city of Los Angeles the executor of so much of his will as related to the property of which he might die possessed in the state of California. As deponent is informed and believes, testator died possessed of certain property in the state of California. Deponent is informed and believes that the last will and testament of George W. Cummings was duly admitted to probate by superior court of the state of California, county of Los Angeles, on or about October 4, 1904, and letters testamentary were duly issued to the said Merchants' Trust Company, which thereupon entered upon its duties as such

executor and took possession of such real and personal property. As deponent is informed and believes, the decree admitting said will to probate among other things ordered and adjudged that said George W. Cummings was at the time of his death a resident of Los Angeles in the state of California. As deponent is informed and believes, subsequently thereto the said Merchants' Trust Company gave notice as prescribed by the laws of the state of California to all persons having claims against the estate of said testator to file the same with the said executor on or before the 14th of August, 1905. As deponent is informed and believes, no claim was filed with the said executor by the Comptroller of the state of New York, or by any other person, on account of any transfer tax which might be owing to the state of New York. As deponent is informed and believes, the Merchants' Trust Company as such executor accounted in the said superior court, which court, as deponent is informed by counsel, and therefore alleges, had jurisdiction under the laws of California to entertain such accounting and to direct final distribution of the estate of said testator thereon, and such proceedings were subsequently had in said superior court that decrees were duly made and entered therein adjudging, among other things, that the trusts attempted to be created by the will of testator are void in all other parts because prohibited by the laws of the state of California, prohibiting the suspension of the power of alienation of real and of personal property during a longer period of time than the lives of persons in being, and directing, among other things, the distribution of all the property held by the said Merchants' Trust Company, as such executor, to the legatees in said will named, and to the assignees of John Cummings, the father of George W. Cummings, and his only heir at law. The said Merchants' Trust Company as such executor has duly distributed the property held by it as such executor, in accordance with the directions of said decrees, and there is now no property in the possession of the said Merchants' Trust Company as such executor.

"The Farmers' Loan & Trust Company, the petitioner herein, has never received any part of the property of which said testator died possessed in the state of California, and as deponent is informed and believes the said Farmers' Loan & Trust Company will never receive said property or any part thereof. Deponent is informed by counsel, and therefore alleges, that the right to assess or impose a tax under the laws of the state of New York upon the property of which testator died seised or possessed, in the state of California, if ever there was such right, was barred by decree of the superior court of the county of Los Angeles, state of California, a court of competent jurisdiction, directing the distribution of the estate of said testator in the hands of the said Merchants' Trust Company, and by reason of the fact that under the laws of the state of California all claims against the said testator or his estate, which had not been presented and proved to said executor, pursuant to public notice, heretofore given and published according to the laws of the state of California, were barred, and by reason of the distribution of the estate of said testator in the hands of the said executor in obedience to the orders of the superior court, without any notice or knowledge of any claim or liability for the payment of a transfer tax under the laws of the state of New York; and I am further informed and allege that, if a transfer tax were assessed upon said property, full faith and credit would be denied to the proceedings and decrees made by the superior court of the state of California, to which it was entitled by the Constitution and laws of the United States."

He then asserts that as to the California property it never came into the hands of the Farmers' Loan & Trust Company, and has been distributed among persons determined to be entitled thereto, by, under, and in accordance with the laws of California and the decrees and orders of its courts. "The said property, upon the death of the said George W. Cummings, did not pass by will or by the intestate laws of the state of New York within the intent and meaning of the statutes in such case made and provided, and is not taxable herein, and that if a tax be assessed upon said property by the state of New York, regardless of the situs of said property, such tax will be in violation of the Constitution and laws of the United States, in that it will deprive citizens of the United States of their property without due process of law.

Deponent is informed by counsel, and therefore alleges, that by reason of the foregoing facts and circumstances the property of which George W. Cummings died seised and possessed in the state of California passed to and was distributed to and among the persons adjudged by the superior court of the state of California, to be entitled thereto free and clear of any and all claim of the state of New York for the payment of a transfer tax therein."

The attorney for the Comptroller filed an affidavit verified July 30, 1908, that he had examined the exhibits in the case of Farmers' Loan & Trust Company against Cummings in the office of the clerk of Special Term, Part 3 of the Supreme Court, and that said papers examined were an exhibit in said case and were exemplified copies of the probate proceedings in the estate of Cummings filed in the superior court of the state of California in and for the county of Los Angeles; and then he sets up what the inventory and appraisement filed by the Merchants' Trust Company of Los Angeles showed.

There is an affidavit verified June 11, 1908, by Francis M. Springer, that he was an attorney and counselor at law duly authorized to practice in California. "I have examined a copy of the record of the proceedings had in the superior court, in the county of Los Angeles, state of California, in the matter of the estate of George W. Cummings, deceased, and am familiar with the same. Under the laws of the state of California, the superior court of the county of Los Angeles has jurisdiction and authority to admit wills to probate and to appoint an executor of the estate of a deceased person; to direct the giving notice to creditors of decedent to present claims; to pass on the accounts of the executor of the estate of a decedent; to determine the validity of trusts created by will; and to direct the distribution of the property of a decedent in the hands of his executors. The proceedings for the probate of the will of George W. Cummings, deceased, the giving of notice to creditors to present claims, the proceedings for the accounting and distribution of the estate of the said George W. Cummings, appear to be regular and in due form of law. Under the laws of the state of California, all persons who neglect to bring any claims against a decedent's estate after notice is given as prescribed by law are forever barred after an accounting and final distribution had under order of the court from any action therefor against the executors. William Hill Co. v. Lawler, 116 Cal. 359 [48 Pac. 323]; Toland v. Earl, 129 Cal. 148 [61 Pac. 914, 79 Am. St. Rep. 100]; Goodrich v. Ferris [C. C.] 145 Fed. 844. Under the laws of said state, a decree of a court settling an account and directing distribution is conclusive and binding to all the world, subject only to being reversed, modified, or set aside on appeal, and cannot be attacked collaterally (citing the first and last of the above cases), and a decree upon a probate of a will is also binding upon all the world (Crall v. Poso Irrigation District, 87 Cal. 147 [26 Pac. 797]; also, Estate of Davis, 136 Cal. 590 [69 Pac. 412]."

The surrogate decided that so much of the estate as consisted of California property as was administered and distributed under the final decree of its court was not subject to the transfer tax, and from the order entered thereon this appeal is taken.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

Alfred Yankauer, for appellant, State Comptroller.

Geller, Rolston & Horan (George S. Mittendorf, of counsel), for respondent, Farmers' Loan & Trust Co.

MILLER, J. The fact that the decedent died a resident of this state was adjudged at the suit of this respondent, upon whose petition this proceeding was instituted. The will itself provided that the residue of the California property was to be remitted to the New York executor; and, though styled an ancilliary executor, the respondent is in fact a domiciliary executor. While the proceeding is instituted by one styled an ancilliary administrator, because the inter-

ested parties having control of the matter saw fit to prove the will in California, any tax assessed will be based on the intestate laws of this state; the trusts attempted to be created by the will having been declared invalid.

If the order of the learned surrogate is right, this state may be precluded by a proceeding in another jurisdiction, to which it was a stranger, from assessing a tax imposed by its laws upon an estate which in law devolved according to its laws, and from collecting it out of the property over which, and from an executor over whom, its courts have exclusive jurisdiction, although the tax is imposed, not upon property, but upon the transfer of it, and although the decree said to have the effect of barring this state is not even proved.

When asked to give full faith and credit to judicial proceedings of another state, we are at least entitled to know what those proceedings were; but this record will be searched in vain for proof of any decrees of the courts of California, to say nothing of any decree even purporting to bar the claim of the state of New York for a transfer tax. All we have are assertions and allegations on information and belief of conclusions respecting the effect of the proceedings in California. If we had before us exemplified copies of those proceedings, we might discover that the imposition of a tax by this state did not deny full faith and credit to them. I assume that, in view of the mass of work which the surrogates of this county have to dispose of, appeals in transfer tax cases have to be decided as a rule upon submitted papers. But that does not justify a party in invoking the full faith and credit clause of the Constitution of the United States upon bare allegations of conclusions upon information and belief. The least that this respondent could have done was to annex to its papers exemplified copies of the proceedings and decrees for which faith and credit were claimed; and, until such proof was made, it was not incumbent upon the State Comptroller either to attack the jurisdiction of the California court or to prove the California law.

In the case of Tilt v. Kelsey, 207 U. S. 43, 28 Sup. Ct. 1, 52 L. Ed. 95, which is said to be conclusive of this appeal, it was stipulated that the appeal to the surrogate be submitted upon the proofs filed upon the coming in of the appraiser's report and upon the affidavit of an attorney, which it was agreed sufficiently showed the record of the proceedings, the accounting of the executors, and the decrees of the New Jersey courts. There was no such stipulation in this case. But, assuming that the legal rights of this state may be defeated upon the bare assertion on information and belief of somebody's conclusion respecting the effect of foreign decrees, there are two important distinctions between this and the Tilt Case. It is not pretended in this case that the order for distribution was preceded by an order forever barring all claims not presented to the executor, and the decree of distribution, as alleged, was simply of the California property, not of the entire estate of the decedent.

As I read the opinion of the court in the Tilt Case, it was decided: (1) That the adjudication respecting domicile was not binding upon anybody not a party to the proceeding. (2) That proceedings for the probate of wills and for the administration and distribution of the

estates of decedents are proceedings in rem. (3) That such proceedings in their effect upon the res before the court are binding on all the world to the extent that they are conclusive within the jurisdiction where held. (4) That upon the proof of the New Jersey law, meager and unsatisfactory though it was, the decree in that case barring all claims not presented, followed by a decree directing final distribution of the entire estate, involved a distribution of the estate freed from all demands, including that of New York state for taxes, and the exoneration of the executor therefor; that these decrees were conclusive in New Jersey upon all the world; and that, therefore, the assessment of a tax by New York state denied them full faith and credit. (5) That it was assumed below that the proceedings in New Jersey were duly had, and that the taxes as assessed were based on the provisions of the will, which derived its authenticity and its capacity to transmit property from the judicial proceedings in New Jersey; wherefore, the jurisdiction of the New Jersey courts could not for the first time be attacked on appeal, although the fact of residence was relevant to that question—indeed, it was stated earlier in the opinion that an adjudication of residence was essential to the assumption of jurisdiction.

Whatever the decrees in that case might import, according to the glimpse of the New Jersey law which the court was permitted to have, a decree for distribution, not of the entire estate, but of a part only, and not preceded by a decree forever barring all demands, does not in and of itself bar the demands of nonresidents. The California courts undoubtedly had jurisdiction to administer the California property in either original or ancillary proceedings; and it seems to me wholly immaterial whether the proceeding was in fact styled ancillary or original, unless rights are to be affected by a mere use of words. The fact is that the domiciliary administration in this case is in the state of New York; and that fact could not be changed by an adjudication in California of the decedent's residence there, which, as was pointed out in the Tilt Case, is not binding on strangers to the record. The administration in California, whether styled original or ancillary, whether based on adjudication of residence or nonresidence, was governed no doubt by the laws of California, independently of the New York administration. Of course, the adjudication of residence might affect the ultimate distribution—a point which I shall presently notice. The important facts now to be noted are that the California courts only assumed to administer and decree distribution of the California property; that such administration was in fact of the property of a nonresident of California; and that it is wholly immaterial that the California courts assumed to administer the property as that of a resident.

In Borer v. Chapman, 119 U. S. 587, 7 Sup. Ct. 342, 30 L. Ed. 532, the entire estate of a nonresident decedent was distributed in California pursuant to an ancillary administration there, but the United States Supreme Court decided that such proceedings did not bar the claim of a nonresident creditor, and that he could reach the assets of the estate in the state of the decedent's domicile, whether originally found there or brought there from California by the executor or legatees. A fortiori a California decree of distribution only of the California property of a decedent in fact domiciled in New York would

not bar nonresident creditors from asserting their claims in the state of New York or affect the right of the state of New York to assess a tax upon the estate as that of a resident of New York.

Within the doctrine of the Tilt Case, the California decree was conclusive only in its effect upon the res. By it the distributee got title to the res, good as against any one claiming as distributee; and we are indebted to the respondent for proof showing that that is precisely the effect which the law of California accords to such a decree. The three cases cited on the point are William Hill Co. v. Lawler, 116 Cal. 359, 48 Pac. 323, Toland v. Earl, 129 Cal. 148, 61 Pac. 914, 79 Am. St. Rep. 100, and Goodrich v. Ferris (C. C.) 145 Fed. 844. They hold, not, as contended, that such a decree is binding on all the world, but simply that it is binding "on heirs, legatees, or devisees," and in the opinion in the first case cited the statute thus limiting the conclusive effect of such a decree is quoted.

In assessing a tax upon the estate according to its laws, the state of New York does not dispute the title of the California distributee. It so happens that he is the person who takes under our intestate laws. But I attach no importance to that fact. The tax is to be determined as of the decedent's death, when the transfer occurs. The decedent being a resident of this state, the succession upon his death was according to our laws, and the right of the state of New York to a tax then accrued; the assessment and collection of it only were postponed. The interested parties might see fit to make actual distribution in some other manner, as they might seek administration and distribution in some other state, on the theory of the decedent's residence there; but it seems to me that such evasion of our laws could not gain sanction from a judicial decree thus procured, and that the right of the state accruing upon the decedent's death could not be affected by the subsequent acts of the parties or by proceedings in another jurisdiction to which the state was not a party. The distinction must not be lost sight of between the transfer in law as of the decedent's death, which determines the right of the state to a tax, and the actual fact of distribution subsequent thereto procured by the act of the parties, whether with or without judicial proceedings. As already indicated, the finding of residence in California and the conclusion, based thereon, that the personal estate was distributable according to the laws of California, are not binding on the state in this proceeding. All that must be admitted is the actual fact of distribution, which, as said, does not in and of itself affect the right to a tax previously accrued. In order successfully to invoke the full faith and credit clause of the federal Constitution, the respondent was bound to prove a judicial proceeding in California having the effect to bar the claim of this state; and it utterly failed to do that.

The Comptroller is not seeking to affect the title or the status of the res distributed under the California decree, nor is he attempting to impose a liability on the California executor. Of course, he does not claim that the order imposing the tax will create a lien on property in California, or impose a liability on a citizen of California not a party to this proceeding. He merely asks that the laws of this state be enforced, that an order be entered fixing the tax which accrued

to the state upon the death of the decedent. He will, of course, have to collect that tax from some person over whom, or from some property over which, the courts of this state have jurisdiction. We need have no fear lest injustice will result, for we may be reasonably certain that estates of decedents who were domiciled in this state are not administered elsewhere without a motive. If those interested allow that to be done, they must not complain when the state undertakes to collect the tax imposed by its laws from any property of the estate which it can find within its jurisdiction.

In view of the importance of this matter to the state and of the way the records in these cases appear to be made, it may not be out of place to call attention to what the representative of the Comptroller ought to prove when the assessment of a tax is opposed on grounds like those now asserted. Obviously, the law of the foreign jurisdiction ought to be proved; and it ought to be shown whether the tribunal for whose decrees faith and credit are claimed had jurisdiction to bar this state from assessing a tax according to its own laws upon the estates of its own citizens.

I apprehend that it will be found to be a universal rule that the personal estates of decedents, wherever situated, devolve according to the law of the decedent's domicile, and that the courts of no state have or assume to exercise jurisdiction to administer such estates regardless of that law. Jurisdiction of the property, and jurisdiction to administer the estate as that of a resident decedent, are very different, and the finding of a jurisdictional fact is not conclusive. Jurisdiction to bar another state from assessing a transfer tax would certainly depend upon the fact of residence. Of course, if the property devolved according to the law of its actual situs, regardless of the residence of the decedent, the state of the domicile could not assess a tax, for the reason that the transfer would not be under its laws. Whether the final distribution of the estate of a nonresident in a given state is decreed there, or whether the residue, after payment of expenses, local creditors, and possibly local distributees, and the like, is remitted to the state of the decedent's domicile, will depend on considerations of comity; but the important question here is whether the final distribution, wherever made, is according to the local law or that of the decedent's domicile. If the law of the domicile controls, the jurisdiction would be limited to administering the particular property and to decreeing distribution according to the law of the domicile or to remitting the residue to the domiciliary representative, and there would be no jurisdiction to bar nonresident creditors from asserting their claims in the state of the decedent's domicile, and certainly none to bar the claim for taxes of the state of such domicile.

A little industry would have enabled the representative of the Comptroller in this case to show that the jurisdiction of the probate courts of California over the estates of nonresidents located there is both original and ancillary (sections 1294–1667 of the California Code of Civil Procedure); that the jurisdiction of said courts is statutory (Smith v. Westerfield, 88 Cal. 374, 26 Pac. 206; Estate of Strong, 119 Cal. 663, 51 Pac. 1078); that personal estates devolve according to the law of the decedent's domicile (Estate of Apple, 66 Cal. 432, 6 Pac. 7:

McCully v. Cooper, 114 Cal. 258, 46 Pac. 82, 35 L. R. A. 492, 55 Am. St. Rep. 66; Murphy v. Crouse, 135 Cal. 14, 66 Pac. 971, 87 Am. St. Rep. 90); that the courts of California will even hold a domiciliary executor responsible for not reducing foreign assets to his possession where he may (In re Ortiz's Estate, 86 Cal. 306, 24 Pac. 1034, 21 Am. St. Rep. 44); that the statute which provides that certain claims not presented and proved will be barred only applies to claims arising upon contracts against the decedent (section 1493, Code Civ. Proc. Cal.; Fallon v. Butler, 21 Cal. 24, 81 Am. Dec. 140; In re Rowland's Estate, 74 Cal. 525, 16 Pac. 315, 5 Am. St. Rep. 464; Finnerty v. Pennie, 100 Cal. 404, 34 Pac. 869); that it has been expressly held that claims for taxes assessed after the death of the decedent are not affected by proceedings for distribution of the estate (People v. Olvera, 43 Cal. 492); and, as already noted, that the decree for final distribution is conclusive only upon "heirs, legatees, or devisees" (section 1666, Code Civ. Proc. Cal.; Chever v. Ching Hong Poy, 82 Cal. 68, 22 Pac. 1081). Under the California law, the heir takes the personal estate. Upon a little reflection, it will occur to any one that claims for taxes and the like are not among the class that have to be presented and proved to the personal representative. It is his duty to pay them, the same as he has to pay the expenses of administration, and he cannot evade that duty by getting a decree for distribution without performing it. They are, therefore, not among the class of claims affected by a final decree for distribution.

Of course, we cannot take judicial notice of the statutes and decisions above cited. I refer to them only to show what might have been proven, if in the limited time which I have been able to give the subject I have discovered and correctly discerned what the law of California is. However, if I am correct, the respondent wholly failed to make a case which called upon the representative of the Comptroller to make that proof. In view of the state of the record, the proceedings should be remitted to the Surrogate's Court.

Order reversed, with $10 costs and disbursements, and proceedings remitted to the Surrogate's Court.

CLARKE, SCOTT, and DOWLING, JJ., concur.

INGRAHAM, P. J. (dissenting). I think the decree of the probate court of the state of California as affecting property actually within that state and subject to its jurisdiction was a proceeding in rem by which it was adjudicated that the devolution of that property upon the death of the testator was under the laws of the state of California and not under the laws of this state; and that such decree judicially established that fact so that no transfer tax could be imposed upon such property by this state. It apparently has been adjudged by the courts of the state of California in a proceeding in which the court had jurisdiction that the decedent was at the time of his death a resident of that state. Assuming that that decree was not an adjudication binding upon the courts of this state as to the residence of the decedent or the right of the courts of this state to administer upon his estate as affecting property within this state, it was such an adjudication as was con-

clusive upon the title of the property within the state of California, and, while that adjudication stands unreversed, it is conclusive as to the property within that state over which the court had jurisdiction. Accepting this adjudication as final so far as the property within the state of California was affected, the courts of this state cannot declare that the property which was actually distributed under that decree passed under the intestate laws of this state so that a tax could be imposed upon the transfer of such property.

    I therefore dissent.