[Civ. No. 7812. First Appellate District, Division One.—March 19, 1931.]

In the Matter of the Estate of ALFRED MAY, Deceased. MIRIAM K. MAY, Appellant, v. RENE A. MAY, Executor, etc., Respondent.

Joseph E. Bien and Werner Olds for Appellant.

Charles W. Slack and Edgar T. Zook for Respondent.

WARD, J., *pro tem.*—This is an appeal by the widow from an order for discontinuance of family allowance, from an order for ratable distribution, and from a decree of settlement of final account and final distribution in the matter of the estate of Alfred May, deceased. Appellant in her briefs has ignored the appeal from the first and second order, and accordingly we will confine our attention to the third point.

The decedent, Alfred May, was married to his first wife, Henriette F., in 1889, and immediately thereafter moved to Mexico, where he eventually engaged in business under the firm name of May Hermanos y Compania. Four children were born as the result of this marriage. About 1913, with his wife, Henriette F., he left Mexico and came to California but did not engage in business. His income was derived entirely from his interest in May Hermanos, and from investments most of which were in Mexican corporations. On January 3, 1925, Henriette May died intestate, a resident of San Francisco, leaving surviving her husband, Alfred May, now deceased, and the four children before mentioned. Subsequent to the death of their mother, Hen-

riette F. May, the four children executed to Alfred May, their father, an assignment of all their interest wherever situate in the estate of Henriette F. May. This assignment was never used. On March 31, 1926, Alfred May, the deceased, married Miriam K. Streckler, now Miriam K. May, the appellant, and on April 19, 1927, he died leaving surviving his widow, Miriam K. May, and the four children by his first marriage. On May 12, 1927, the last will and testament of Alfred May was admitted to probate in the Superior Court of the City and County of San Francisco, and under the terms of said will the widow and four children each are bequeathed one-fifth of the entire estate of Alfred May, deceased. By said last will and testament, Rene A. May, a son by the first marriage, is named sole executor to act without bonds, and after due proceedings qualified as such executor. The executor filed his first and final account and the petition for final distribution. Appellant filed objections. After a hearing, the court settled the account and decreed final distribution. Thereafter appellant appealed to this court from the said decree of final distribution.

It appears from the inventory and appraisement that the assets of the estate of Alfred May include an "interest of the decedent in May Hermanos y Compania, a partnership engaged in business in Hermosillo, State of Sonora, Republic of Mexico, amounting to approximately $55,812.00, subject to whatever interest therein may be determined by the Mexican courts to be vested in the estate of the late Henriette May now being probated in the Mexican courts, appraised at $55,812.00". And it appears from the first and final account filed by the executor that "the appraisers of the said estate in valuing the items of the claim of the decedent against May Hermanos y Compania appraised the said claim at the full amount of $55,812.00, whereas the said executor is of the opinion that only half of the said claim is the property of the estate of the decedent, and the remaining one-half thereof, as said executor is informed and believes, is the property of the estate of the late Henriette F. May, the first wife of the decedent, whose estate is now being probated in the State of Sonora, Republic of Mexico". It further appears from the first and final account that "the claims of the decedent against May Hermanos y Compania

and Compania Industrial del Pacifico are not now payable, but are payable over a period of years, and the said claims can be readily collected by the distributees of the estate of the said decedent as in these probate proceedings, and there is no necessity of continuing these probate proceedings for the collection thereof''. The inventory and appraisement also contains the following: ''Note. Various parcels of real property, situate in the Republic of Mexico, in which the decedent had an interest, one of the said parcels of real property being under a contract of sale to one Emilio Beraud, are not listed in the foregoing inventory because not within the jurisdiction of the State of California.''

Appellant contends that the evidence did not show what the community property law of Mexico was, and that the court was bound in its decree of distribution to apply the provisions of the California law in this case. Certain Mexican statutes were discussed during the hearing, and from the transcript, we conclude that counsel for appellant knew and understood the law of Mexico, and from the briefs that, if the Mexican statutes were properly before the court, there was no misapplication of such statutes to the order of distribution. Likewise, respondent concedes that if the case were to be considered solely in the light of the California law, the interests of Henriette F. May, the first wife, in the community property, would have vested in her husband on her death, and that the partnership would have been dissolved by the death of Alfred May. We have, therefore, as the first question to consider: Did the court upon the hearing have the right to apply the Mexican provisions of the community property law to the facts as presented? If any provision of this law was introduced, then the court had the right to consider any or all of the Mexican laws upon this subject which might appear in the volume of laws introduced. (See *Ex parte Spears*, 88 Cal. 643 [22 Am. St. Rep. 341, 26 Pac. 608].) The certificate of the judge who presided at the hearing is attached to the reporter's transcript, and he certifies that the Political Constitution of the United States of Mexico, published by Herrero Hermanos, Sucesores, in 1920, was introduced, and that there was read into the evidence paragraph II of article 121 of the Constitution; also the Law of Family Relations of Mexico. The laws are quoted in the Spanish language and translations

given with a statement that the translations were vouched for by a witness produced for the executor. The transcript of testimony does not disclose that any objection was interposed to the method of introduction. Upon examination of witness, counsel for appellant propounded questions which indicated that he knew the laws of Mexico, and evidently accepted the translations as correct. The right of the court to consider the Mexican statutes upon this subject need not be considered further, except to say that the decree of distribution was in accordance with such provisions.

▆ Appellant contends that the court erred in distributing the claim of the estate against May Hermanos y Compania to the heirs instead of requiring the executor to collect the same and account therefor in the estate of Alfred May pending in the city and county of San Francisco. The executor of the Alfred May estate in San Francisco is also the executor of the estate of Alfred May in Mexico; likewise he is the administrator of the estate of Henriette F. May pending in Mexico. Appellant relies upon the decision in the case of *In re Ortiz's Estate,* 86 Cal. 306 [21 Am. St. Rep. 44, 24 Pac. 1034]. Caledonio Ortiz was a resident of California, and died leaving property in Spain, Mexico, and California. The executor collected and took possession of all that part of the assets of the estate which were then in Spain and converted all the personal property into money. He then came to California and was appointed and qualified as executor of the Ortiz estate. In due course of time, the executor filed his final account but did not charge himself with the assets collected from Spain. Objections were filed, and after a hearing thereon, the court charged the executor with an amount found to be the residuum of the Spanish assets after deducting expenses, charges, and demands against the Spanish estate. The court found that the executor could have had the residuum with which he was charged transferred to him in this state before the filing of his final account. The proceeds of the estate were actually on deposit in a bank in Spain. There was no question in the Ortiz case but that the Spanish tribunal would credit the executor with all that he was required to account for and distribute in California. Under these facts, the California court had the right to demand an accounting of the foreign assets, and the Supreme Court so held. How-

ever, an executor cannot be held answerable when he cannot compel the collection of foreign assets upon his domestic appointment. ''Whether, then, the principal or domiciliary representative be required, *pro forma,* or not, to include in his inventory assets which come to his knowledge, either situate in the state or country of principal and domiciliary jurisdiction, or out of it, his liability as to assets of the latter sort depends somewhat upon his means of procuring them, and the fact of an ancillary administration in the situs of such assets.'' (*In re Ortiz's Estate,* 86 Cal. 315 [21 Am. St. Rep. 44, 24 Pac. 1034, 1036].) The court of the domicile has the right to punish an executor upon refusal or neglect to account for foreign assets that are collectible. The California court could not punish the California executor of the Alfred May estate because, whatever interest or profits up to date there may be from May Hermanos y Compania are claimed by the estate of Henriette F. May pending in Mexico. Under the laws of Mexico as introduced in evidence, personal property as well as real property is governed by the law of the situs. Under the circumstances it would have been futile to make an order that would not be binding in Mexican jurisdiction. Assuming that the trial court had jurisdiction over the executor in Mexico in the Alfred May estate by reason of his domiciliary executorship in California, and that the court here ordered a contest to determine the rights of the respective estates, such contest would of necessity be brought in Mexico. The court found that whatever money the respondent executor had received for the estate of Alfred May had been accounted for. There was no evidence to the contrary.

After the death of Henriette F. May, the children heirs executed a so-called assignment of their interest in her estate to their father, the deceased herein. Appellant contends that the trial court sitting in probate passed upon the validity of this alleged assignment. The assignment was executed but was never accepted and never presented for use in Mexico. In the decree of settlement of the final account and of final distribution, there is a reference to this instrument, but the court did not make a finding thereon.

█ Further objection is made that respondent had no authority to extend the time of payments of a debt of, or to

make himself, as executor, a copartner in, May Hermanos y Compania. Under the California law an executor of an estate of a deceased partner,. by reason of his position of executor, has no power to extend the partnership or to do anything else which would create the partnership anew, but this agreement was in fulfillment of the original articles of copartnership and the respondent acted in his capacity as executor in Mexico. The surviving partners had a right to insist that the interest of the decedent should be liquidated in the manner provided in the original articles. Under the original articles the heirs are "obliged to leave in the possession of the copartnership or of the person or persons which may legally succeed the same, the amount of their interest in the copartnership capital and profits for the term of five years".

The interest of the decedent in the copartnership in the Beraud contract (also objected to by appellant) would not be binding on the Mexican company, on Beraud, or on the children of Henriette F. May, and the court properly declined to fix the amount, but decreed to each heir an undivided fifth interest.

Judgment affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 18, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 18, 1931.