Argued December 6, 1933; reversed January 9, 1934

In re Stewart's Estate
STEWART et al. *v.* BAXTER
(28 P. (2d) 642)

*Arthur H. Lewis,* of Portland (Lewis, Lewis & Finnigan, of Portland, on the brief), for appellant.

*W. C. Bristol,* of Portland (Bristol & Cole, C. T. Haas, and Peterson & Potts, all of Portland, on the brief), for respondents.

BEAN, J. Robert J. Stewart, the deceased, was adjudged an incompetent in November, 1921, and K. K. Baxter was appointed guardian. Robert J. Stewart died testate in the city of Portland, Oregon, on September 10, 1925, leaving as his sole heir his son, Robert A. Stewart. Robert A. Stewart was nominated in his father's will as executor. Young Stewart did not care to serve and K. K. Baxter, on request of Robert A. Stewart, the sole heir and nominated executor, was appointed administrator, with the will annexed. The inventory in this estate was filed on November 17, 1925, and showed the appraised value of the estate as $49,800, less mortgages of $21,690, or a net estate of $28,110. The estate consisted principally of real property in the city of Portland, flat buildings on Flanders street, a garage building on Union avenue and East Glisan street, and a residence building on East Fifteenth street, vacant acreage in Hood River and Klamath counties and a farm in the state of Washington. The Washington property was not included in the Oregon inventory. All the claims against the estate have been paid with the exception of one to the Inman-Poulson Lumber Company, contracted by Robert J. Stewart prior to 1921, which is disputed and against which the statute of limitations has run, both under the laws of Oregon and Washington.

The administrator filed two reports of his transactions with the court, one on May 5, 1926, and one on May 27, 1927. On February 16, 1932, K. K. Baxter, upon application of Robert A. Stewart, was served with an order to show cause why he should not file a

full and complete accounting of his administration and why he should not be removed and the estate closed. The matter was first brought before the court on application of Robert A. Stewart, sole heir of Robert J. Stewart, deceased, to require an accounting from K. K. Baxter. On March 21, 1932, K. K. Baxter filed his final account showing receipts on and between September 12, 1925, and March 16, 1932, in the sum of $50,798.19, and disbursements and expenditures with the vouchers therefor up to March 17, 1932, amounting to $49,270.80. Upon the account being filed Robert A. Stewart filed objections to the accounting on the ground that the administrator had no authority to make the disbursements claimed as credits. On July 6, 1932, Baxter filed a supplemental report giving an account of the transactions from March 21, 1932, to July 6, 1932. By order of the court, dated July 6, 1932, K. K. Baxter was relieved of his duties as administrator and A. C. Callan was appointed administrator in his stead. A. C. Callan, as administrator, also filed objections to the final account.

There is no claim made of any misappropriation of funds nor any objections made to the accuracy of K. K. Baxter's account. The sole question raised is whether credits should be given for the character of the expenditures made. The estate is not insolvent. At the time of turning the estate over to A. C. Callan the condition of the estate was as follows:

Assets

| | | |
|---|---|---|
| Cash on hand | | $ 1,356.66 |
| Union Av. property | $15,000.00 | |
| Mortgage | 4,500.00 | 10,500.00 |
| Hood River property | | 100.00 |
| Grand total | | $11,956.66 |

### Indebtedness

| | |
|---|---:|
| Money borrowed | $ 2,200.00 |
| Taxes | 596.85 |
| Current bills | 33.55 |
| Allowance to Administrator by court | 1,000.00 |
| Allowance for attorney's fees | 500.00 |
| | $ 4,330.40 |
| Total assets in excess of liabilities | 7,626.26 |
| Grand total | $11,956.66 |

The first objection of A. C. Callan, the administrator, to the accounting of K. K. Baxter which, with slight variations, is applicable to the objection to several of the items, is as follows:

"The item dated September 15th, 1925, Robert A. Stewart $50.00 is objected to because said item is not a claim against the above estate and never has been such claim and no authority of the Court for the payment thereof is shown in any of the estate proceedings nor is there any authority in the laws for the payment thereof and any such payment if actually made was an individual transaction between the administrator as an individual and the said Robert A. Stewart as an individual, and has no connection with the above estate and is not a proper charge against the said estate nor a payment for which the said K. K. Baxter as administrator is entitled to any credit therefor in his accountings herein."

For the same reasons in connection with said item and upon the same legal grounds, the administrator objects to several items paid by K. K. Baxter to Robert A. Stewart, the sole heir and legatee, as advancements of his share of the estate. The items range from $30, advanced to Robert A. Stewart December 30, 1925, to $300 paid to Robert A. Stewart for his wedding ex-

penses on August 10, 1927, the last item being June 14, 1929, paid to Robert A. Stewart, $110. The total amount of such payments to Robert A. Stewart, the heir, personally, being $4,137.61.

The testimony shows that these payments were all made at the special instance and request of Robert A. Stewart at or about the dates mentioned in the account and vouchers or checks were introduced showing the several payments. Robert A. Stewart, who is a party in the proceeding, did not take the stand or dispute the testimony of K. K. Baxter in any respect. There was no order of the court for making such payments.

■ Advancements made by an administrator to an adult distributee or legatee are properly chargeable to him on a final accounting. The amount so advanced should be credited to the administrator against the share of the distributee. ''The accountant is entitled to credit against these to the full extent of payments made to them, whether ordered by the court or not.'' 3 Woerner on Administration (3d Ed.) 1793, § 519.

It seems that for a time Robert A. Stewart was attending college and requested advancements of about $100 per month from the administrator for the purpose of defraying his expenses.

Section 11-811, Oregon Code 1930, provides that at any time after filing of the first semi-annual account, any heir, devisee, or legatee may apply to the court, by petition, for an order that he have the possession and rents and profits thereof of the portion of the real property to which he may be entitled, and that payment be made to him of his legacy or distributive share of the personal property of such estate, as the case may be.

■ The general rule is stated in 24 C. J. 473, § 1282:

''It is a well-settled general rule, which is established by statute in some jurisdictions, that an executor

or administrator may be allowed or ordered to make a partial distribution before final settlement of his accounts or the expiration of the statutory period, where it can be made without prejudice to the rights of creditors and other persons interested, * * *.''

It is stated on page 482, § 1305, of that volume:

''Advances and disbursements made by the representative for the benefit of legatees or distributees of the estate are to be reimbursed from their respective portions of the estate; and they should be specially adjusted by the representative, aside from his ordinary administration accounts, by way of an offset to the amount due from the estate in his hands to the legatee or distributee, * * *.''

■ Where disbursements are made from the representative's own funds for the benefit of a legatee, the administrator is entitled to a credit therefor as a charge against the heir's share. 24 C. J. 483, § 1309. We also find on the same page, § 1311:

''Expenses bona fide and prudently incurred by the representative for the benefit of legatees or distributees may be duly set off against the legacies or distributive shares concerned therein, * * *.''

In the case at hand there is only one heir or legatee interested in the estate. Therefore there is no division to be made among different persons. Whatever is left of the estate, after paying the claims against the estate and expenses of administration, would belong to Robert A. Stewart.

■ Criticism is especially directed to K.K. Baxter on account of an advancement to Robert A. Stewart, the beneficiary, of $2,500. The $2,500, the testimony shows, was the amount that Baxter advanced to him, and when the money was obtained for the estate Baxter reimbursed himself. The criticism is on account of his saying, in effect, after he explained the matter, that he

charged it up to Robert A. Stewart, but that is only a portion of his testimony, and it is thoroughly explained that the money was paid to Robert A. Stewart. K. K. Baxter would often advance money to Robert A. Stewart, when he was in need of the same, from his personal funds, when there was no money of the estate on hand. Practically all of the transactions pertaining to the estate were made by K. K. Baxter with the consent and approval of Robert A. Stewart, who was of the age of majority. The payments made by K. K. Baxter to Robert A. Stewart, although no order of the court was obtained therefor, were made in good faith, in a prudent and judicious manner for the sole benefit of Robert A. Stewart. It appears to be the objection of the present administrator and Robert A. Stewart that the assets in the hands of K. K. Baxter should all be paid over to the new administrator and then if he has any claim against the estate on account of payments made to Robert A. Stewart he should collect the same. Why the necessity for passing the funds to the present administrator and then making settlement or payment thereafter, we are unable to see. There was no profit made, or claimed to have been made, by K. K. Baxter and such payments should be credited to K. K. Baxter in his final account.

■ Objection is made to payments amounting to $3,484.43 to the Federal Land Bank on a mortgage on the Washington farm. Robert J. Stewart, at the time of his death, owned a farm in the state of Washington, and there was an administration of his estate in that state, which was closed June 10, 1927. This was apparently for the purpose of clearing the title of the Washington real estate. K. K. Baxter paid the cost of administration of the estate in Washington, amounting to $144.75, and made payments of taxes in Cowlitz

county, Washington, amounting to $2,899.58. These payments were made for two reasons: To protect the property of the estate, and also at the request of Robert A. Stewart, the heir. Objection is made that the property was outside of the state of Oregon, and it is claimed that the administrator had no authority to make the payments. In acting as such administrator, K. K. Baxter represented the creditors of the estate and also the heir or legatee. It was his duty to care for the property belonging to the estate, and after the administration in the state of Washington it was eminently proper for K. K. Baxter, as administrator, to pay taxes on the property in Washington and not permit the same to be sold therefor. Taxes due in the state of Oregon are fourth in priority of payment. Section 11-801, Oregon Code 1930. It was also for the benefit of the estate and Robert A. Stewart that the payments should be made on the Federal Land Bank mortgage, although the land was situated in Washington.

In considering a similar question, the Supreme Court of Pennsylvania, after reviewing the decisions in that state, said:

"But in no case has it been held that the mere fact of an administrator expending money in any reasonable effort to save the property of his intestate situate in another state, is sufficient to convict him of *devastavit*. * * * There are often many things he may do which suggest themselves to the prudent business man, tending toward the preservation of the estate, and are neither obnoxious to the law nor antagonistic to the interests of the foreign creditors. Shinn's Estate, 166 Pa. St. 121, 129." 1 Woerner on Administration (3d Ed.) 559, note.

■ While many nice legal questions arise as to the authority of an executor or administrator to institute

or maintain an action in the courts of any country, save that which has granted him letters testamentary or of administration, without authority from the country in which he brings the action, when we come to the question of protecting the property belonging to the estate when there has been a regular administration in such foreign state, here Washington, a different question arises. To hold that such a representative owes no duty whatever to creditors or next of kin with reference to property outside of the jurisdiction, would be to invite neglect and consequent waste and dissipation of the property. That he has no standing as a suitor in a foreign jurisdiction does not alone fix the measure of his duty nor has it ever been so regarded in practice. *Shinn's Estate,* 166 Pa. St. 121, 129.

The payments made for the benefit of the estate and Robert A. Stewart in regard to the property in the state of Washington are approved and should be credited to K. K. Baxter.

There are payments to the C. I. T. Corporation and Mrs. R. A. Stewart made at the request of Robert A. Stewart, which stand in the same condition as the payments made to Robert A. Stewart as advancements, and should be allowed.

■ Objection is also made to necessary traveling expenses, $67.20, and taxi hire, $13.90. It is unquestionably the law that disbursements, reasonable in amount and for services necessary in the proper discharge of the duties imposed upon him, will constitute a charge in favor of an executor or administrator against the estate, although their allowance would leave no surplus to pay creditors of the deceased, and such expenditures may be retained from the funds of the estate by the administrator or executor. Sections 11-709, 11-806, Oregon Code 1930; 2 Woerner on Administration (3d Ed.) 1181, § 356.

■ K. K. Baxter advanced to Robert A. Stewart cash on note which, with interest, amounted to $1,369. When funds were received from the sale of property of the estate, K. K. Baxter cancelled the note and charged the same to the estate as a payment to Robert A. Stewart. It is not disputed but what such payment was regularly made, although the brief of respondent refers to charging it up to Robert A. Stewart, as though that were all of the transaction. This advancement to Robert A. Stewart, the heir, is in the same condition as those to which we have referred. These items referred to amount in the aggregate to the sum of $12,-353.59, which should be allowed in Baxter's account.

■ There was, belonging to the estate, property mentioned as the Flanders Street property, which was sold by this administrator upon the order of the court for $28,000, $16,000 over and above a mortgage thereon of $12,000. Objection is made to commission paid for the sale of this property, amounting to $1,400; also for collection of rent of the Woodard Portland property, $40.50; for collection of Longview, Washington, farm rent, $33, and to the payment of commission for obtaining rentals of the Union avenue property and Washington farm, $366.25, and real estate sales commission on Holliday property, East Fifteenth street, $375. It is claimed by the respondents that these are not proper charges against the estate, and that such services should have been rendered by the administrator himself. It is not questioned but that the sale of the Flanders Street property was advantageous to the estate. The sale was approved by Robert A. Stewart and by the probate court, and the commission is not claimed to be unreasonable. It is apparent that if the administrator had not obtained the services of a real estate dealer the sale would not have been made. It is

a matter of general knowledge that in the collection of rent, especially farm rent, it would be practically impossible for the administrator to attend to such collections personally. The same may be said in regard to leasing the Union avenue property and the Washington farm. These expenses were necessary, equitable and just, and should be allowed. Such services are just as essential as the services of an attorney in the administration of an estate. A broker's commissions in negotiating sales of real property of the estate are usually allowable. *In Re Saunders' Estate,* 77 Misc. 54 (137 N. Y. S. 438) ; *Hickman-Coleman Co. v. Leggett,* 10 Cal. App. 29 (100 P. 1072) ; *Jarvis v. Drew,* 215 S. W. 970.

It is stated in 24 C. J. 90, § 513, thus:

"An executor or administrator is authorized to use the funds of an estate for expenditures necessary to its proper administration, and is entitled to credit in his accounts for expenses necessarily and properly incurred by him in good faith, in transacting with reasonable care and diligence the business of his trust, upon due proof of the particular items of expense claimed. The practical situation is usually that the executor or administrator makes himself liable de bonis propriis to others by incurring expense, but that he may reimburse himself under appropriate circumstances out of the assets of the estate."

The previous action of the court is not necessary, however, and expenses properly incurred without sanction may be allowed. 24 C. J. 91, § 515. It is also stated in 24 C. J. 498, § 1339, as follows:

"Voluntary payments to distributees without an order or decree of court authorizing the same are made by the representative at his own peril * * *. Such distribution is, however, perfectly legal. * * * Furthermore the representative may be entitled to credit for the payments made, if they are correct and not more than the recipient's distributive share, and will

be protected by a subsequent decree authorizing such payments, or allowing an account in which such payments are stated."

■ Where the payment itself was a proper one, the representative is not denied credit because the payment was made at an improper time or involved an excess of authority. *Steelman v. Wheaton,* 72 N. J. Eq. 626 (66 Atl. 195). In *Palmer v. Whitney,* 166 Mass. 306, 309 (44 N. E. 229), it is stated thus:

"But it is a common practice, when the distributees are known and their shares undisputed, to pay them what is due without a decree of distribution, and to credit the payments in the final account. When such payments are made, and are credited in the account, and the distributees assent to the account, or have notice of it and make no objection to the allowance of it, or are heard upon the allowance of it, and their objections are overruled, we see no reason why the account should not be allowed. If the distributees have actually received all they are entitled to, they ought not to be heard to complain that the formality of obtaining a decree of distribution has been omitted. An administrator distributing the property without a decree of distribution incurs the risk that there may be distributees who are not bound by the allowance of his account; but if he is willing to take this risk, the distributees who have received all they are entitled to cannot complain of the procedure."

Objections are made to item dated January 2, 1926, K. K. Baxter, on account of sums due under the guardianship, allowed by the court, $1,000, and to the item, July 16, 1927, balance due on guardian statement, $1,460.06, for the reason that they are apparently claims of the administrator against the estate itself, and if the guardianship was indebted to K. K. Baxter, who at that time was acting as guardian, it was his duty, as guardian, to receive his payment from the

guardianship estate before it was closed. It appears that upon the death of Robert J. Stewart in September, 1925, when K. K. Baxter assumed the duties of administrator of the estate of Robert J. Stewart, deceased, in closing the guardianship matter, K. K. Baxter carried over as a debit against the estate, an item of $2,308.44 due him for money advanced and for accrued fees for acting as guardian.

■ It was agreed between K. K. Baxter and Robert A. Stewart, the heir, that in the administration of the estate of Robert J. Stewart, deceased, Baxter should receive $50 per month for his services. This arrangement was continued in effect by agreement with the heir, until the sale of the Flanders Street property by Baxter, as administrator, in July, 1927. Thereupon Baxter's compensation was agreed to be $20 per month, and upon this basis Baxter made his claim of $2,105 for services, as administrator. Under the arrangement made with the heir, Baxter took charge of the entire estate of Robert J. Stewart, deceased, both in the state of Oregon and in the state of Washington and proceeded to act, not only as an administrator but also as a manager of the property. This was done in accordance with the request of Robert A. Stewart. Notwithstánding the allowance made by the probate court, which might be termed tentative, the present administrator and Robert A. Stewart object to these items. The testimony shows that in presenting the guardianship claim Baxter had the approval in writing of Robert A. Stewart to the $1,000 and the $1,406.06. A verified claim was filed with the approval of the heir and allowed by the court. While we do not rely upon this wholly, we think that the agreement with the heir, which appears to have been fair and equitable, should be very influential in fixing the amount of compensa-

tion of the administrator for extra services. At the time of the administration of the estate, Robert A. Stewart, as stated, was about 28 years of age. The objection to these items at this late date is not well taken.

■ The general rule is laid down in 24 C. J. 991, § 2425, thus: ''The compensation of an executor or administrator may be fixed by an agreement between him and persons beneficially interested in the estate * * *.''

■ There is an objection to the payment of a note given for a loan of $800 and interest, $29. This transaction was had, as the testimony shows, upon petition to the court and approval by Robert A. Stewart and ordered by the court. The purpose of the loan was to obtain private funds to pay off a $7,000 loan that was on the Union avenue property. A loan of $6,500 was obtained and with the expenses of the loan and the commission which was authorized, the difference which they needed was $800, or $7,300 to pay all of the expenses in connection with it. The objections to the item are overruled.

■ Objection is made to the payment of the Miller note, $259.25. Payments were made of $100, July 16, 1926, and the balance February 1, 1927, the grounds of the objection being that no legal obligation existed on behalf of Robert J. Stewart to pay this note. Robert J. Stewart, in his lifetime, signed this note as an indorser. The maker having failed to pay the same a verified claim was filed against the estate and paid with the knowledge of the heir, Robert A. Stewart. This appears to have been a legal claim against the estate and should be allowed.

■ Complaint is made that K. K. Baxter, on the amount due from the guardianship estate, charged compound interest in figuring the amount each six

months. We have not the data to correct this. If compound interest was charged on these items, the probate court, with the assistance of counsel, is hereby authorized to correct the same and allow K. K. Baxter only simple interest, at the legal rate.

The supplemental account of the transaction between March 21, 1932, and July 6, 1932, of that year, filed by Baxter, as administrator, shows two months' rent collected, $150, and expenditures of $320.73, leaving a balance of cash on hand at that time in the sum of $1,356.66.

■ One of the main objections to the final report of K. K. Baxter, as administrator, was his failure to file semi-annual reports of proceedings of the estate, which section 11-701, Oregon Code 1930, requires to be filed within the first 10 days of April and of October of each year until the administration is completed and he is discharged from his trust. Section 11-702 provides that an executor or administrator, who shall fail to file an account, as required in the last section, may be required by citation, ordered by the court or judge, to appear and do so, either upon the application of an heir or creditor, or other person interested in the estate, or without it. If the executor, or administrator, refuse or neglect to appear when cited, or to file the account as required, he may be punished for contempt, or by warrant of the judge be committed at once to close custody in the jail of the county until he consent to do so. It does not appear in the present case that there was ever a citation issued to Baxter or that any special request was made by the sole heir for the filing of a semi-annual account. This statute authorizes the proceeding if an administrator neglects to file such account. There is no authority in the statute or elsewhere for penalizing an administrator who fails to

file a semi-annual account by disallowing his final account, or items thereof.

In Re Fehlmann's Estate, *Hofer v. Gofner,* 134 Or. 33 (292 P. 1029, 72 A. L. R. 949), it was shown that the executor, in selling the notes of the estate at less than face value, acted with the approval of the residuary legatee's attorney in fact; also that the executor was dilatory in reporting performance of duties, and did not strictly comply with statutory requirements, but was not guilty of any fraudulent act in administration. It was held that mere negligence of the executor, not resulting in loss to the applicant for removal, was not ground for removal, and that the executor, dilatory, but not unfaithful to his trust, having fully and fairly administered the estate before institution of removal proceedings and having fully accounted, was improperly removed. While the removal of Baxter as administrator is not questioned by him, that case shows the view of the court where the executor was merely dilatory in filing his report. Mr. Baxter, it appears, was an old friend of Robert J. Stewart, deceased, and faithfully administered his estate.

There are some 275 items in the final report, ranging from small expenses, such as notary fees, to thousands of dollars, and it would extend this opinion to too great a length to mention many of these items. The real property left by Robert J. Stewart, deceased, was encumbered, and it was necessary for him to obtain new loans and collect the rents and sell the real estate to satisfy the mortgages, as far as could be done. The expenses of Robert A. Stewart were continuous and he was advanced different amounts as he requested and as necessity demanded and not a cent seems to have been wasted or misappropriated by the administrator. There is no fraudulent act pointed out

on his part. It comes with poor grace from Robert A. Stewart, after he has received the money, to complain that he received it too early or to object to the administrator being compensated for funds that he has advanced. K. K. Baxter testified that "I kept him (Robert A. Stewart) fully advised on everything that was going on" in detail. Robert A. Stewart does not contradict Mr. Baxter's testimony in any way. No witness other than K. K. Baxter was called or testified at the hearing.

Complaint is made that when Robert A. Stewart received from K. K. Baxter the sum of $1,000 as a loan to be paid, with interest, Baxter took an assignment as security therefor and for advances hitherto made and for future advances which may be necessary to be made, which stated:

"I hereby assign, transfer, set over and convey all my interest in and to the estate of my late father, Robert J. Stewart. When the above advances have been paid this agreement will be null and void."

This was signed by Robert A. Stewart March 5, 1927, and witnessed. When funds were received by Baxter belonging to the estate, then the advances theretofore made to Robert A. Stewart were satisfied and paid and the assignment was nugatory. On December 1, 1927, a similar assignment was made for the same purpose. No one was injured by these transactions. It is not shown or claimed that Baxter profited in any way by the assignments. We see nothing wrongful in such transactions.

It is stated in the brief of respondent as follows: "On the evidence submitted the court finds against the appellant. That finding is the finding of fact of a jury that cannot be re-examined or set aside." This does not indicate the practice under the law in this

state. The proceedings in a probate court touching the final account of an administrator are in the nature of a suit in equity, as distinguished from an action at law, and an appeal is from a decree and not a judgment, and the case is to be tried de novo. Section 11-101, Oregon Code 1930; *Re Plunkett's Estate,* 33 Or. 414 (54 P. 152); *In re Webster's Estate,* 74 Or. 489 (145 P. 1063); *Re Faling Estate,* 113 Or. 6 (228 P. 821, 231 P. 148). This court is not relieved from the responsibility of determining the question involved anew.

 An executor or administrator occupies a position of the highest trust and confidence and is required to use reasonable diligence and act in entire good faith in performing the duties of his trust. The prudence, care and judgment of fiduciaries, ordinarily capable under like circumstances, furnish the standard by which his conduct is to be judged. The acts of an administrator should be judged according to the circumstances which existed at the time. An administrator should follow the statute and make his reports to the court in accordance therewith, and if he fails, when requested to do so by the probate court, is subject to removal.

The probate court decreed that the objections be allowed, and further decreed that according to the administrator's supplemental report, March 21, 1932, to July 6, 1932, there was on hand cash in the sum of $1,356.66. Adding thereto the items herein disallowed, makes a total of $19,563.01, cash on hand. Deducting therefrom the $1,000, administrator's fees, and the additional $500 attorney's fees herein, leaves a net balance of $18,063.01 "which it is hereby ordered, adjudged and decreed that K. K. Baxter pay to Arthur C. Callan as administrator of the above named estate".

This decree is reversed and the objections filed by the present administrator, A. C. Callan, and by Robert

A. Stewart, are overruled and denied, except as to the compound interest above mentioned. The $1,000 administrator's fees allowed by the court are less than the statutory commission. Under section 11-711, Oregon Code 1930, the administrator is entitled to $1,138.96, which is hereby allowed. In addition thereto, according to the testimony and the agreement between K. K. Baxter and Robert A. Stewart, the sole heir, the extraordinary work done by the administrator in the care and management of the estate was reasonably worth $966.04, which is allowed the administrator, making the total sum of $2,105.

The additional $500 as attorney's fees allowed by the trial court is hereby approved.

The cause will be remanded to the circuit court, probate department, with directions to allow the final account of K. K. Baxter, as administrator, with the exception of the interest above mentioned. The appellant K. K. Baxter is entitled to his costs and disbursements to be paid by the estate.

BELT, J., not sitting.