Argued December 5; affirmed December 27, 1945;
rehearing denied February 19, 1946

In re JOHNSON'S ESTATE
JAMIESON et al. *v.* HANNA
(164 P. (2d) 886)

216

*Reuben G. Lenske,* of Portland, for appellants.

*Lester W. Humphreys,* of Portland (Gilley, Humphreys & Sercombe, Edward R. Harvey, and Barge E. Leonard, all of Portland, on the brief), for respondents.

HAY, J.

John Q. Johnson died, testate, on December 26, 1943, at Portland, Oregon. He left an estate of the value of about $24,000, $13,000 of which consisted of cash in bank. His will made specific disposition of his household furniture, and bequeathed to certain of his friends sums aggregating $2,850. In addition to these, it bequeathed to Ethel Jamieson an annuity, limited to an aggregate of $3,000, payable in installments of $25 a month during the life of the annuitant, and to Margie Pumphrey a similar annuity, payable in like installments, but limited to an aggregate of $2,000. W. Carl Hanna was named as executor.

On January 11, 1944, the will was admitted to probate in the Circuit Court for Multnomah County. Mr. Hanna was appointed executor, and qualified immediately by filing a surety company bond in the sum of $18,000. He made due publication of notice to

creditors, and, on March 2, 1944, filed his inventory and appraisement.

On October 13, 1944, Ethel Jamieson, who is a niece of the testator and claims to be his sole heir at law, filed a petition charging the executor with certain derelictions of duty and praying for his removal, and, on the same day, Susan Alma Johnson, a legatee under the will, filed a similar petition. Answers having been filed by the executor, the petitions were consolidated for hearing. On December 19, 1944, the petitioners filed a joint amended and supplemental petition, amplifying their charges against the executor. A hearing was held upon the joint petition on December 20, 1944, and, upon the termination thereof, the court dismissed the petition. Petitioners have appealed to this court.

■ The law requires an executor or administrator, during the progress of the administration of an estate, to render semi-annually, within the first ten days of April and October, a verified account of his receipts and disbursements, with proper vouchers, which account must disclose details of the claims presented against the estate, "and any other matter necessary to show the condition of the affairs thereof". Section 19-1001, O. C. L. A. No account was filed by this executor until October 18, 1944. It appears that the executor, who is a retired officer of the United States Army, was, during the year 1944, engaged in a supervisory position of some importance in the engineering department of a Portland shipbuilding yard. His work had an intimate relationship to the prosecution of the war, and was of such urgency as to leave him but little time for other business. It does not appear that the interests of the estate suffered by reason of his failure to file his account on time, or that the

petitioners suffered any loss thereby. No demand was made by the petitioners upon the executor that he should file an account, nor did they invoke the statutory procedure provided by section 19-1002, O. C. L. A., to compel him to do so. Under the circumstances, the failure of the executor to file his interim accounts on time was not ground for his removal. *Hofer v. Gofner,* 134 Or. 33, 41, 292 P. 1029, 72 A. L. R. 949; *Stewart v. Baxter,* 145 Or. 460, 476, 28 P. (2d) 642, 91 A. L. R. 818; 21 Am. Jur., Executors and Administrators, section 153.

■ Petitioners complain that material facts were omitted from the account which was filed October 18, 1944. It failed to state that demand had been made upon the executor by Ethel Jamieson for payment of the monthly installments of her annuity, and that he had failed to comply with such demand. It appears that Mrs Jamieson had been threatening to contest the will. Indeed, in her petition herein, she expressly reserves the right to institute such contest. The executor testified that, under those circumstances, he felt that it was his duty to withhold payment of Mrs. Jamieson's annuity, and we are satisfied that, in so doing, he exercised a wise discretion.

■ The law requires an executor or administrator to file an inventory and appraisement of "all the real and personal property of the deceased which shall come to his possession or knowledge". Sections 19-401, 20-128, O. C. L. A. Petitioners allege that the inventory filed in this case failed to include certain carpenter tools and a diamond ring which belonged to the testator. As to the tools, the explanation of the executor was that he did not consider them as the tools of a workman, but as a part of testator's household furni-

ture, and, therefore, included them in the inventory under the general head of "household furniture and furnishings." He admitted that, on numerous occasions, he had observed the testator wearing a diamond ring, but said that testator told him that the ring would not become a part of his estate. It appears that testator was wearing the ring when he died, and that immediately thereafter it was removed from his finger by a gentleman who afterward became one of the appraisers of the estate, and delivered by him to Mrs. Esther Beeman, a neighbor and close friend of testator's. The executor was not apprised of those facts until during the hearing. Under the circumstances, it cannot be said that the ring was property of the deceased which had come to the executor's possession or knowledge, and his failure to include it in the inventory was not dereliction of duty.

 The will bequeathed certain household furniture to Esther Beeman and Margie Pumphrey. The petitioners accuse the executor of having distributed such furniture to Mrs. Beeman, without lawful authority. See sections 19-1204, et seq., O.C. L. A. The executor testified that the furniture was in the decedent's residence, and prevented him from deriving rental therefrom. He made inquiry as to the cost of storing the furniture in a public warehouse, but found that the expense would be prohibitive. Mrs. Beeman resided in a house immediately across the street from decedent's residence, and the executor made arrangements to store the property at her house pending distribution thereof. While this action was somewhat irregular, it was not such malfeasance as to justify the removal of the executor. Even if it should be regarded as a premature distribution, the executor made it at his own

risk, and, upon proper showing, might in due course be surcharged upon his account, or otherwise held liable for the value of the property. *Steward v. Baxter*, supra (145 Or. 460, 472, 28 P. (2d) 642); 34 C. J. S., Executors and Administrators, section 503. The petitioners argue that the executor should have retained the furniture and rented the house furnished, thereby deriving a greater revenue for the estate. The furniture, however, having been specifically devised, the executor had no authority to use it in the manner suggested. Incidentally, petitioners assert that the executor has rented the testator's dwelling-house for less than the current rental value, but, in our opinion, the evidence does not sustain such charge.

Mrs. Esther Beeman presented a claim against the estate in the sum of $2,500, for services, consisting of housework and nursing, alleged to have been rendered by her to decedent. The executor rejected the claim. He testified at the hearing that he had been acquainted with Mrs. Beeman for a number of years and regarded her as a friend. He said that he knew that she had performed some services for testator, but felt that he was unable to judge of the value of such services. The probate court held a hearing upon the claim on October 9, 1944, at the termination of which the judge intimated orally that he intended to allow the claim in full. The petitioners complain because the executor did not notify petitioner Ethel Jamieson of the existence of Mrs. Beeman's claim or of the fact that it had been set for hearing, and allege that evidence was available to defeat the claim, and that the executor failed to make an investigation to discover such evidence. They say, moreover, that the executor was a witness for the claimant at the hearing, and thereby violated his

trust. They contend, besides, that the executor was negligent in failing to have the hearing of the claim reported by a court reporter.

It is true that Mr. Hanna testified as a witness for Mrs. Beeman respecting the claim. No doubt he was called as an adverse witness, but, in any event, his testimony respecting facts of his own knowledge was no violation of his trust. The mere fact that he is executor does not render him an incompetent witness for the claimant in such a case. Our statute provides that no claim which has been rejected by an executor or administrator shall be allowed by any court "except upon some competent satisfactory evidence other than the testimony of the claimant." Section 19-704, O. C. L. A. Competent corroborative proof, therefore, includes "all species of evidence, other than 'the testimony of the claimant' ". *In re Hattrem's Estate*, 170 Or. 613, 135 P. (2d) 777, 786. The law of Oregon is liberal in respect of the competency of witnesses, and effects no exclusion either of parties or "other persons who have an interest in the event". Section 3-102, O. C. L. A. Cf. *Barton v. Dyer,* 38 Idaho 1, 220 P. 488.

After the court had orally allowed Mrs. Beeman's claim, but before a formal order of allowance was entered, the petitioners herein were permitted to intervene, and filed a motion for a rehearing. In due course, a rehearing was ordered. Before the day fixed for the rehearing arrived, however, Mrs. Beeman withdrew her claim. Thereafter, she filed suit against the executor and the heirs for specific performance of an alleged agreement between decedent and her, under which she claims that, in consideration of personal services to be rendered by her to decedent, he promised to make her the beneficiary of the residue of his estate which

should remain after payment of specific bequests. This suit is still pending.

The executor takes the position that he was not aware of the existence of evidence which would have defeated Mrs. Beeman's claim, and says that such evidence was not communicated to him by any one. We think that, upon the hearing of such a relatively large claim, the testimony should have been taken down by a court reporter. The executor's failure to have this done, however, while no doubt an error in judgment, was not in bad faith, and in any event has resulted in no loss to the estate. No reason is apparent why the executor should have advised Mrs. Jamieson of the pendency of the claim. The petitioners suggest that the executor's conduct with relation to this claim brought about its withdrawal and the institution of the suit for specific performance, under which Mrs. Beeman's claim is in effect much greater than it was at first. This, however, is mere speculation.

Finally, petitioners say that the executor is so biased in favor of Mrs. Beeman that he cannot impartially represent the estate in the defense of her suit. The executor, however, strenuously denies any such suggestion. He states that Mrs. Beeman's suit is unjust, and insists that he will energetically oppose it. We are satisfied that he will do so.

The late Judge Louis P. Hewitt, who presided upon the hearing in the lower court, was of the opinion that, while the executor had not, in all things, acted strictly in accordance with the letter of the statute, nevertheless the petitioners had failed to establish that he had been unfaithful to or had neglected his trust to their probable loss as legatees. Section 19-222, O. C. L. A. In our view, the decision was correct.

The decree is affirmed, without costs to any party.