[Civ. No. 41225. Second Dist., Div. Four. Apr. 24, 1974.]

Estate of JOSEPH MASSAGLIA, JR., Deceased.
SECURITY PACIFIC NATIONAL BANK,
As Special Administrator, etc., Petitioner and Appellant, v.
LAURA MASSAGLIA, Objector and Appellant;
HONG KONG BANK OF CALIFORNIA,
As Administrator With the Will Annexed, etc., Claimant and Appellant.

## COUNSEL

Joseph W. Fairfield and Ann Ruth Grant for Objector and Appellant and for Claimant and Appellant.

Henry J. Shames and Pacht, Ross, Warne, Bernhard & Sears for Petitioner and Appellant.

## OPINION

COLE, J.*—The Security Pacific National Bank (hereafter "Security"), special administrator of the estate of Joseph Massaglia, Jr., deceased, on the one hand, and Laura Massaglia, objector to the first and final account and report of Security and Hong Kong Bank of California, administrator with the will annexed, on the other hand (hereafter "objector" and "Hong Kong" respectively) each appeal from portions of an order and judgment settling the first and final accounting of Security.[1]

Because of the pendency of a will contest, Security was appointed special administrator with "the same powers, duties and obligations [as] a general administrator." (Prob. Code, § 465.)

Security ultimately filed its first and final account and report, together with petitions for approval of monies paid out and for allowance of statutory and extraordinary fees for itself and its counsel. Objector filed her objections to much of the account and report. A lengthy hearing was held. The court made findings of fact and conclusions of law and filed its order and judgment settling the first and final account and report. This order, from portions of which the two appeals were taken, sustained some of the objections while overruling others, and surcharged Security in the sum of $35,973.09.[2] We will discuss the pertinent findings and conclusions and the applicable portions of the order and judgment, as well as some of the evidentiary facts underlying them, when we reach in turn the particular issues raised by these appeals.

---

*Assigned by the Chairman of the Judicial Council.

[1] At oral argument it was stipulated that during the pendency of this appeal, and after the filing of the joint brief herein by objector and Hong Kong, objector died. The record discloses that her interest in the estate was contingent upon her survival of distribution, an event which has not yet occurred. Therefore, the appeal is moot as to objector and will be ordered dismissed. Throughout this opinion, however, we will continue to refer to positions taken at the hearing below or in the brief filed by objector. The questions raised will be decided upon the appeal of Hong Kong, as administrator with the will annexed. Hong Kong and objector filed a joint notice of appeal and raised identical issues.

[2] The surcharge of $35,973.09 consisted of the following:
(i) The net sum of $33,548.09 advanced by the special administrator from estate funds in connection with property in New Mexico in which decendent had an interest;
(ii) $1,250 representing the difference between a claim of $2,300 against the estate, approved by the court and paid to a law firm, and the sum of $1,050 which the trial court thought was the proper amount of the claim.
(iii) $1,175 allegedly wrongfully paid out of estate funds for the benefit of Wilshire-Miramar, Inc., and Cal M, Inc.

## Hong Kong Has Standing to Appeal

 Security makes a variety of arguments concerning the standing of Hong Kong to appeal and the notice of appeal filed by Hong Kong. The contention that Hong Kong is not an aggrieved party misconceives the obligation of an administrator. Such a representative may appeal from a judgment whose effect is to lessen the assets of the estate. (See discussion and cases cited at 6 Witkin, Cal. Procedure (2d ed. 1971) p. 4121.) The issues raised by Hong Kong here involve claims by it which, if sustained, would ultimately have the effect of increasing the estate. Therefore, Hong Kong has standing. Other contentions concerning appeal will be discussed to the extent necessary as we reach the various issues affected by the arguments.

## Issues Concerning the Ancillary Administration in New Mexico

The court found that at the time of his death decedent owned a two-thirds interest in the Franciscan Hotel in Albuquerque, New Mexico, the sole interest in a garage abutting the hotel, the hotel furnishings, an interest in a liquor license for the hotel, and other personal property, all of a net value of $162,490.72. This property, the court found, was under the jurisdiction of the special ancillary administrator (a New Mexico bank brought into the matter by Security after the latter received permission of the probate court here to have ancillary proceedings commenced and to advance $2,000 for expenses and costs to the special ancillary administrator; the court also ratified the previous action of Security of advancing $500 to the New Mexico bank). Security had no duty with respect to the New Mexico assets the court held, other than to see that the ancillary administrator was appointed. The court further found that Security had advanced from the California estate for the benefit of the New Mexico estate the total sum of $36,672.58 and that none of the advances, except $2,500 were authorized by the California court. After giving credit for the authorized $2,500 and two miscellaneous items, the court surcharged Security in the amount of $33,548.09.

The amounts making up the surcharge here, insofar as New Mexico expenditures are concerned, were advanced to pay operating expenses, and taxes on the Franciscan Hotel, for travel and telephone expenses of various of Security's officers, and for miscellaneous accounting and insurance expenses.

The court further found that it was the primary duty of the special ancillary administrator, not Security, to redeem the estate's interest in the Franciscan Hotel from certain foreclosure proceedings, and rejected a

request to surcharge Security for damages alleged to flow from a failure to redeem.[3]

On August 7, 1970, Security petitioned the court for instructions concerning the Franciscan Hotel. That petition recited that since there was no cash available in New Mexico and since there were pressing obligations to be paid to preserve the property Security had advanced "approximately $30,000 since the death of decedent, but that the hotel was losing money and that Security had asked the special ancillary administrator to close the hotel." It also stated that the attorney for the owners of the other one-third interest said he would no longer oppose the closing of the hotel.[4] The petition also stated that "Petitioner does not believe that it should advance any further funds for the continued operation of the Franciscan Hotel" but that because there were substantial equities in New Mexico it asked permission to advance funds required to effect the closing.

The court's order in response to this petition for instructions was that Security "not pay any further monies to the Ancillary Special Administrator in New Mexico for the operation of the Franciscan Hotel . . ." and that Security "may pay any and all sums necessary to preserve the Estate's interest in the real property located in the State of New Mexico, except monies related to the operation of the Franciscan Hotel." The court also found, in settling Security's account, that the order was sought as an excuse for refusing further requests for money by the special ancillary administrator and not for the purpose of obtaining approval of the moneys previously advanced for the operation of the hotel.

 Security asserts that, contrary to the finding of the trial court that it had no duty with respect to the New Mexico property except to see to the appointment of a special ancillary administrator there, it had a responsibility to preserve the estate's equity in the New Mexico assets. We agree. (*In re Stewart* 1934) 145 Ore. 460 [28 P.2d 642, 91 A.L.R. 818].)

It is true, as the parties all recognize, that one of the purposes of an ancillary probate proceeding is to collect and conserve assets in other jurisdictions for the benefit of creditors there (*Estate of Glassford,* 114 Cal. App.2d 181, 189 [249 P.2d 908, 34 A.L.R.2d 1259]). It is also true that costs of administration of the ancillary estate should ordinarily be borne

---

[3]The record shows that eventually the hotel was redeemed from foreclosure.

[4]This owner was a nephew of decedent, and one of the beneficiaries of the will ultimately admitted to probate. He also was the operating head of a corporation which held the mortgage on the Franciscan Hotel and which foreclosed on it. He was represented in various California proceedings by the same attorney who represented objector.

out of the assets of that estate. (*In re Ortiz,* 86 Cal. 306, 316 [24 P. 1034].) But these considerations cannot in any way detract from the duty of a domiciliary executor or administrator such as Security to look to the next step involved in an ancillary probate administration after the ancillary creditors have been paid: the gathering in to the domiciliary estate of the excess assets properly belonging to it. ". . . It is the general rule that surplus personal assets in an ancillary administration, i.e., personal assets not required for the payment of claims and expenses of administration lawfully filed and allowed in the ancillary administration, should be remitted to the domicile for final settlement and distribution of the estate. . . ." (*Estate of Patmore,* 141 Cal.App.2d 416, 423 [296 P.2d 863].) There is a duty on a domiciliary executor or administrator also with respect to real property located in a foreign jurisdiction. As in the present case, both real and personal assets were located in another jurisdiction in *In re Ortiz, supra,* 86 Cal. 306.

Objector and Hong Kong each seemingly recognized that duty when they sought to surcharge Security for failing to redeem the estate's interest in the Franciscan Hotel from foreclosure and, in fact, Hong Kong, a domiciliary administrator, subsequently accomplished such a redemption. Counsel for Hong Kong stated at that time that it did not have much choice but to redeem because of the equity in the property. It comes with ill grace for objector and Hong Kong now to refer to Security's New Mexico activities as "meddling" in the New Mexico administration. As was said in *Ortiz* at page 314: ". . . And yet, to let external assets knowingly escape his control, and be lost to the estate, when with reasonable diligence they might have been procured, seems a plain dereliction of duty in the principal or domiciliary representative, whose function, as rightly understood, is to grasp the whole fortune, as the decedent did during his life, save so far as the obstructive law of foreign *situs,* or the limitations of his own appointment, may restrain him."

Since Security did not receive approval from the court to expend estate funds in connection with the New Mexico administration, except as to the sum of $2,500, it acted at its own peril. (*Estate of Burke,* 198 Cal. 163, 166 [244 P. 340, 44 A.L.R. 1341].)

■ Where funds are expended without prior authority the trial court must determine whether the expenditures were necessary and reasonable. ". . . These matters must of necessity be left to the discretion of the judge in settling the account, and unless it appears that such discretion has been abused, it is not subject to review. . . ." (*Estate of Moore,* 88 Cal 1, 4 [25 P. 915].)

In the instant case it is clear that the trial court did not exercise its discretion because it felt that Security had no duty at all in connection with the New Mexico property. On remand the court should determine whether or not to ratify the expenditures made without prior express approval.[5] (*Cf. Estate of Grivel,* 199 Cal. 351, 357 [249 P. 184].)

The claim that the $2,500 amount approved by the court to be advanced to the ancillary administrator should be refused to be reimbursed is without merit.[6] The order approving the advance long ago became final and is binding here. The whole purpose of securing court approval prior to incurring of expenditures is to insulate a representative from later claims of liability. "If his acts and the expenditures are approved 'there is no rule of law which will deprive the court of power to reimburse him.' (*In re Moore* [*supra*] 88 Cal. 1 [25 Pac. 915].) . . ." (*Estate of Maddalena,* 42 Cal.App.2d 12, 19 [108 P.2d 17].)

Security also argues that when it secured the order not to pay "any further monies" to the ancillary special administrator over objector's opposition the court in effect ratified the prior unauthorized payments. Security has not shown us in any way why the trial court's finding that the order was secured as an excuse for refusing further requests for money, and not for the purpose of obtaining approval of the monies previously advanced, is erroneous.

Insofar as the trial court denied any fees for extraordinary services to Security as the result of its activities concerning the New Mexico estate, the court should reconsider the matter on remand in light of our discussion herein and in light of the court's ultimate determination whether or not to approve any or all of the advances.

### Issues Concerning the Miramar Hotel

The principal asset of the estate was the ownership of all of the outstanding shares of stock in Wilshire-Miramar, Inc., a California corporation which owned the Miramar Hotel in Santa Monica. Objector and Hong

---

[5]Insofar as the New Mexico expenditures relate to travel costs, whether or not they are recoverable is equally a matter in the sound discretion of the trial court which must determine whether the travel costs were necessary in order to accomplish the business in question. (*Estate of Emerson,* 175 Cal. 724, 726 [167 P. 149]; *Estate of Shillaber,* 1 Cof. Prob. Dec. 101, 105-106.)

However, it may be inequitable to hold that a representative who advances funds necessary to preserve the assets of an estate, but who fails to secure advance consent so to do, is not entitled to reimbursement. (*In re Clos,* 110 Cal. 494, 501 [42 P. 971].)

[6]The order can no longer be directly attacked since the time to appeal from it long ago expired. (Rule 2(a), Cal. Rules of Court.)

Kong stated in their brief on this appeal that "It was necessary that someone take charge of the assets of the decedent and operate the Miramar Hotel" and accordingly Security was appointed special administrator pending resolution of the will contest.

Several airlines had arrangements with the hotel to use its facilities to house their personnel. Apparently the hotel was in a run-down condition and repairs were needed for it to retain the patronage of these tenants and to secure other business. In connection with the hotel Security did the following things: It elected two of its employees and a third person as directors of the corporation and they in turn elected officers of the corporation, including several of Security's employees. Security then petitioned the court for approval to vote its stock (1) in favor of the employment of the third person as general manager of the hotel; (2) to hire an accounting firm to audit the hotel corporation's books and prepare its tax returns, and (3) for the expenditure of $75,000 to repair and refurbish the hotel. This petition was granted. In a second petition Security asked for permission, which was likewise granted, to transfer certain certificates of deposits and other moneys to the corporation because the assets belonged to the corporation.

In a third petition Security petitioned for approval to vote the stock in favor of ratifying an agreement made between the corporation and the Lurie Company. The court authorized Security to vote to ratify the agreement. This agreement, which Security's brief indicates was the product of a good deal of effort on the part of Security's personnel, recast a transaction entered into between the Lurie Company and the corporation before the death of the decedent. That transaction was in the form of a purported sale of the hotel to the Lurie Company. Security stated that it regarded the matter as in actuality being a security transaction and that it was important to have it so designated to avoid disastrous tax consequences to the corporation. The agreement reformed the transaction, subject to certain contingencies, to reflect Security's views. The court authorized Security to vote to ratify the agreement.

Security also petitioned for authority to vote the stock of the corporation to ratify the actions of the directors in expending a total of $150,000 in refurbishing the hotel, this amount being double the sum as to which approval had previously been given. This latter petition was opposed by objector on the ground, among others, that Security was operating the hotel at a loss and exhausting the capital and cash reserves of the estate. The court denied the petition without prejudice on the ground that "it is unnecessary for petitioner . . . to obtain Court authorization to vote the stock . . . to ratify action taken by the Board of Directors."

The court found, with respect to the Wilshire-Miramar Corporation and the hotel that during his lifetime the decedent recognized and maintained the corporate structure as an independent corporation and that Security did the same upon succeeding to the stock ownership. The court also found, paraphrasing case law which we will discuss shortly, that at all times Security was a stockholder "and not the corporation and its power as a stockholder was simply to act as a stockholder and as such to vote the stock and not to run the corporation."

It was further found that Security "had no duty to participate in any way in the management or operation of [the corporation] and its acts in so doing were unauthorized and it had no right to employ counsel with any such acts." As to objector's claim that mismanagement had wasted the assets of the corporation, the court found that any injury would be to the corporate entity and that it and not the objector could raise the question. Further, it was found that ordinary fees would adequately compensate both Security and its attorneys. The appraised value of the shares in the corporation was found to be $3,600,000.[7] Conclusions comporting with the findings were entered.

In the course of the proceeding counsel for Security, who was also counsel for the hotel corporation, had caused to be prepared, and presented to Security for approval, a creditor's claim against the estate in the amount of $1,335,109.24. This claim was approved by Security. The theory of the claim was that the corporation had applied money in this amount for the benefit of the decedent without having declared dividends or the payment of a salary to him. Counsel testified that in this situation there would be a substantial tax imposed on the decedent and that "In order to avoid these taxes, we filed the claim contending, of course, that those moneys were borrowed by the decedent with the intent to repay them to the corporation." The amount of the claim was arrived at after the accountants employed by the corporation made various examinations of the corporation's books and various adjustment entries in them. Some of these adjustments were made on the instructions of counsel for the estate after the accountants determined that they agreed with accounting standards. The trial court found that the claim of the corporation in the sum of $1,335,-109.24 showed "no basis in fact" and rejected it.

---

[7] The stock in the hotel corporation had been appraised at $3,800,000 by the inheritance tax appraiser. Objector argued that because the Lurie transaction was a sale from her point of view, the shares were worth substantially· less. The court appointed three additional appraisers who found, and whose finding was adopted by the court, that the shares were worth $3,600,000, whatever the nature of the Lurie transaction.

The contentions made with respect to the Miramar Hotel and Wilshire-Miramar, Inc. may be summarized as follows: (1) Objector and Hong Kong argue that the trial court had jurisdiction to determine that Security was guilty of misfeasance and neglect in operating the hotel; (2) Security argues that the trial court erroneously refused to award it and its counsel extraordinary fees for services rendered in connection with the hotel and Wilshire-Miramar, Inc.; (3) Security argues that it was improper for the court to refuse to approve the claim of the corporation made against the estate; (4) objector and Hong Kong argue that the three court-appointed appraisers overvalued the stock of the corporation by the sum of $1,533,988.38.[8]

At no point in either of the briefs presented to us does anyone actually say that they are attacking the sufficiency of the evidence to support the findings of the trial court. However, the contentions which we have numbered 3 and 4 above are each, in effect, nothing more than such attacks and we reject them. In commenting on Security's brief, objector and Hong Kong remind us that in the absence of a challenge to findings it is assumed that they are supported by the evidence and that they support the judgment (*City of Los Angeles* v. *Greve,* 53 Cal.App.2d 88, 90 [127 P.2d 322].) Objector and Hong Kong further point to the elementary duty of an appellant to set forth all of the evidence on an issue if the sufficiency thereof is challenged. Having made these comments, objector and Hong Kong forget to apply them in their own brief. The reporter's transcript of the hearings held below in this matter contains in excess of 2,500 pages. No party to this appeal has purported to set out all of the evidence on the two points under discussion and we decline to search the record to find it. The factual nature of the issue concerning the trial court's refusal to approve the claim filed by the corporation against the estate is illustrated by Security's own concession that the validity of the claim depends on its establishing that the decedent intended to borrow money from the corporation and also intended to repay it. Not only could the trial court disagree that this was the decedent's intention, nowhere has Security discussed any evidence on this point. The factual nature of the issue concerning the appraisal of the value of the stock is obvious.

We now proceed to discuss the trial court's holding that it was without jurisdiction[9] to inquire whether Security did or did not mismanage

---

[8]Security argues that no appeal lies from items (1) and (4). However, Hong Kong's inartfully drawn notice of appeal includes, inter alia, an appeal from the trial court's allowance of ordinary and extraordinary fees to Security. Since the appraised value of the shares in Wilshire-Miramar, Inc., and the alleged mismanagement of the affairs of the hotel would directly affect the amount of fees awarded to Security, we believe Hong Kong's appeal notice can fairly be read to raise these issues.

[9]We need not discuss here the many meanings attributed to the word "jurisdic-

the hotel property. ■ Where the stock of a corporation was entirely owned by a decedent during his lifetime the latter's estate is simply the stockholder and not the corporation. "The power of the estate is simply to act as a stockholder." (*Estate of Winder,* 99 Cal.App.2d 83, 85 [221 P.2d 193]; *Klopstock* v. *Superior Court,* 17 Cal.2d 13, 17 [108 P.2d 906, 135 A.L.R. 318].) "Its power is to vote the stock, *not to run the corporation.*" (*Estate of Winder, supra,* at p. 85; italics added), and the probate court may not become directly involved in running the business affairs of a corporation which has a separate legal existence. (Contrast the situation where, unlike the present case, the corporation was only the *alter ego* of the decedent (*Estate of Auslender,* 53 Cal.2d 615 [2 Cal.Rptr. 769, 349 P.2d 537]) or was so treated by the executor (*Estate of Barreiro,* 125 Cal.App. 752 [14 P.2d 786]).

■ This is not to say that the conduct of an executor or administrator with respect to a corporation wholly owned by the decedent is totally immune from judicial scrutiny. Rather, the representative must act with the same degree of care that a prudent shareholder would have used, vis-a-vis the business of the corporation. It is the general duty of an administrator to at least exercise that degree of prudence and diligence which one of ordinary judgment would use in connection with his own affairs. (*Estate of Robl,* 163 Cal. 801, 802 [127 P. 55]; *Estate of MacMillan,* 43 Cal.2d 437, 446 [274 P.2d 662].) In *Estate of Behr,* 149 Cal.App.2d 84, 86-87 [307 P.2d 937] it was found that a corporation wholly owned by the estate was mismanaged, but that the executor took no action and exercised no rights as a stockholder with reference to the mismanagement. Accordingly, the executor was negligent,[10] a result which could only follow from a breach of duty to use care. Security owed such a duty of care here. To the extent that the court failed to inquire into or resolve the claim of mismanagement on the ground that it lacked jurisdiction so to do, error was committed.

■ Security complains that it and its counsel should have been awarded extraordinary fees for their services in respect to the corporation. The trial court found in effect that the services which were rendered to the corporation were undertaken by Security's own employees in their capacity as

tion" in various fields of law. "The term, used continuously in a variety of situations, has so many different meanings that no single statement can be entirely satisfactory as a definition." (*Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280, 287 [109 P.2d 942, 132 A.L.R. 715].) We use the term here to mean lack of power to make the inquiry in the circumstances of this case.

[10]No liability resulted in *Estate of Behr* because it was also found that no loss resulted from the executor's inaction.

officers and directors of the corporation. Accordingly, since the corporation was solvent and able to pay its officers and directors for the reasonable value of their services, the court found that the special administrator had no duty or obligation to pay for such services and in awarding extraordinary fees did not take them into account. It is not contested that the allowance of extraordinary fees is a matter within the discretion of the trial court, not only as to the amount of such fees but also as to whether their character is such as to warrant the payment of extraordinary compensation. (*Estate of Scherer*, 58 Cal.App.2d 133, 142 [136 P.2d 103].) As was said in *Estate of Barreiro, supra*, 125 Cal.App. 752, 762, "If the trust officer had rendered these services in his capacity as an officer of the corporation he should have sought his compensation from the [corporation] and not from the estate."

We are not told whether Wilshire-Miramar, Inc. in fact did pay compensation to any of its officers and directors who were also employees of Security or to counsel for the corporation who are also counsel for Security in this matter. Neither do we know whether such officers and directors in turn reimbursed Security for any such payments or whether Security in any way received recompense from Wilshire-Miramar, Inc. for the work done by its officers or employees. If any such sums were received, Security, as special administrator, should have disclosed that fact to the court in a petition for instructions and should have received permission to retain such funds. The amounts paid to counsel for Security should likewise have been disclosed.

With this information before it, the court then is in a position to determine whether Security, as special administrator, should or should not receive additional awards for extraordinary services rendered by it as the shareholder of the corporation. A distinction must be made between services in that capacity, and services performed in connection with the management of the affairs of the corporation by its directors and officers. Compensation for the latter services is the responsibility of the corporation. The question of extraordinary fees for counsel to the special administrator should be similarly evaluated. Accordingly, we reverse the order denying extraordinary fees to Security and its counsel in connection with Wilshire-Miramar, Inc. for further proceedings not inconsistent with this opinion.

*Miscellaneous Issues*

The trial court surcharged Security $1,250, after the latter had paid the claim of a law firm for fees for legal services which it had rendered to the decedent. The firm had presented a claim in the amount of

$2,937.50 for these services. One of Security's officers allowed the claim, *and the court also approved it for payment.* Thereafter, and before the claim was paid, Security negotiated with the law firm and obtained a reduction in the claim to the amount of $2,300. The law firm filed a "partial withdrawal of creditor's claim," and Security approved and paid that amount. The court found that the payment of $2,300 was "without any order of the court authorizing such payment," and that the amount of the claim "shocks the conscience of the court and is unreasonable" and further found that the reasonable value of the services rendered is $1,050. Hence the surcharge of the difference.

It is at once apparent that this surcharge is improper. It is founded on a totally inaccurate finding that the payment of the sum of $2,300 was made "without any order of the court."

Section 713 of the Probate Code provides that claims allowed by an executor or administrator and approved by the judge are ranked among the acknowledged debts of the estate, but that their validity may be contested at any time prior to the settlement of the account of the representative (except for claims established by a judgment). Thus the trial court here could inquire into the merits of the claim despite its prior approval. However, the approval was prima facie evidence of the correctness of the claim and the burden was on objector to show that the claim was improper. (*Estate of Roberts,* 49 Cal.App.2d 71, 78 [120 P.2d 933].) We are cited to no case, and have found none, where a representative was surcharged for paying an *approved* claim. Manifestly the previous approval of the greater amount by the court carried with it an approval of the lesser amount. We hold that the court abused its discretion in surcharging the executor for the $1,250.

█ Security was also surcharged $375 for payments it had made from the moneys of the estate to an accounting firm for services rendered by the firm to Wilshire-Miramar, Inc. Security admits that no evidence was introduced as to why the estate, and not the corporation, made the payment. The surcharge was proper. The decedent was also the owner of all of the shares of a corporation named Cal M, Inc. For reasons unexplained in the record, Security paid the same accounting firm $700 for services rendered to Cal M, Inc. and paid to the Franchise Tax Board the sum of $100 on account of this corporation. The surcharge of these amounts, totalling $800 was likewise proper.

Security argues that objector made vague and unspecific charges against its stewardship and that because of these charges and an alleged hostile attitude of the trial court towards Security the hearing on the accounting

was unduly protracted. The trial court refused to award attorney's fees to Security for defending its account and report. Security objects, citing *Macmorris Sales Corp.* v. *Kozak,* 249 Cal.App.2d 998 [58 Cal.Rptr. 92], a case where the same attorney represented objectors as represents the objector here. It urges that in each case the objector produced no affirmative proof but instead relied on cross-examination of the person whose accounts were challenged.

While it is true that, "The amount of evidence which a probate judge may require of any executor in support of the correctness of any account is largely a matter of his own discretion." (*Estate of Barreiro, supra,* 125 Cal.App. 752, 773), we believe that whether Security should receive attorney's fees for services rendered in connection with the challenge to its final accounting should await the ultimate outcome of these proceedings. At that time the trial court can take into account the extent to which Hong Kong's arguments have proven successful and can also take into account any needless examination which may have been brought about by any aimless charges of objector. The court can also consider at that time the effect, if any, which should be attributed to the inconsistent positions taken by objector during various stages of these proceedings. While Security complains that the court also refused fees to it (as opposed to its counsel) for defending the account, the record does not indicate this. It shows, rather, that the court refused to presently award 60 percent of the statutory fees and commissions—a refusal completely justified by the provisions of Probate Code sections 467 and 468—but did find that Security was entitled to the sum of $10,850 to be paid on account of ordinary commissions, which amount was to be deducted from the surcharges. Here again, however, we believe that the ultimate question of whether or not Security should or should not receive extraordinary fees for defending the contest of the account should abide the final result.

Conversely, objector argues that it was premature for the court to make the finding that Security was entitled to the sum of $10,850 and a similar finding that Security's counsel were entitled to a like amount when the order settling the final account becomes final. We find no merit in this contention. Neither are we impressed with the argument made by objector and Hong Kong that their attorneys should have received a larger fee for the contest than the sum of $4,250 which the court allowed. This, too, is a matter peculiarly within the discretion of the trial court.

The appeal of Laura Massaglia is dismissed as moot. The order and judgment of the trial court is reversed insofar as it denies the petition of Security seeking approval of monies paid in connection with the ancillary

administration and insofar as it surcharges Security and denies fees to Security and its counsel in that connection, and the court is directed to conduct such further hearings with respect to the ancillary administration as it deems necessary in accordance with the requirements of this opinion. The order and judgment is reversed insofar as it surcharges Security for $1,250 on account of payments made to prior counsel for the decedent. Insofar as it approves the creditor's claim of that counsel only in the sum of $1,050 the order and judgment is also reversed; the court may make such further inquiry into the matter as it deems necessary. Insofar as the order and judgment refuses to inquire into Security's claimed mismanagement of the affairs of Wilshire-Miramar, Inc., and insofar as it refuses to award extraordinary fees to Security or its counsel the order and judgment is reversed with directions to the trial court to conduct such further proceedings, not inconsistent with this decision, as are necessary. In all other respects the order and judgment is affirmed. Each party shall bear its respective costs and attorney's fees on appeal.

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied May 10, 1974.