Filed 4/24/15  Estate of Jennings CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| Estate of DOROTHY JEAN JENNINGS, Deceased. | |
| | D065745 |
| EDWARD G. KING, et al. | |
| Respondents, | (Super. Ct. No. P190541) |
| v. | |
| MILES J. KING, | |
| Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, Jeffrey S. Bostwick, Judge.  Affirmed.

Peter A. Quint for Respondent Edward G. King.

No appearance for Respondent Marilyn Kriebel.

Miles Jennings King, in pro. per., for Appellant.


Dorothy Jean Jennings (Mother) died in February 2006, leaving two adult sons

Edward King (Edward) and Miles King (Miles).  During the next nine years, the two sons

disputed numerous aspects of Mother's estate, creating unfortunate delays and procedural complexities. In this appeal, Miles challenges the court's February 2014 order approving a final estate accounting. Upon reviewing the appellate record and the parties' briefs, we conclude Miles failed to meet his burden to show reversible trial court error. Accordingly, we affirm.

SUMMARY OF RELEVANT FACTS

Mother's will (Will) named her son Edward and her long-time friend Brigitte Feucht as coexecutors (Coexecutors). Mother designated numerous specific personal property gifts to various individuals, and stated that the remaining personal property items were to be given to Edward and "NO ITEM OF PERSONAL PROPERTY . . . is to go to my son, MILES J. KING. Personal property . . . does not include money, real property and houses." The Will further provided that Mother's interest in real property located in Texas (including property known as the "Conley Farm") would be distributed one-half to Edward, one-quarter to Miles, and the remaining to two named granddaughters. The Will stated that Miles "shall have no input or authority as to the sale of any property, real, personal or otherwise belonging to my estate."

Six months after Mother's death, in August 2006, the Coexecutors submitted an inventory and appraisal, valuing the estate at $779,311.50. In July 2007, the Coexecutors added to the inventory certain shares of common stock for Conley Production, Inc. (CPI), a closely held Texas corporation that oversees mining operations on Conley Farm. In August 2007, the Coexecutors submitted the "First and Final Account" that included the CPI stock as an estate asset, but listed the stock value as "[n]il."

2

In 2008, Miles served the Coexecutors with a document production request, seeking numerous categories of documents related to the CPI stock and Conley Farm, including information regarding mineral and oil/gas leases on the property. During the next two years, the parties litigated various aspects of this request and other matters.

In 2010, Miles filed a lengthy (79-page) motion seeking to remove the Coexecutors. In May 2010, Edward resigned as Coexecutor. The next month, the court ordered Edward to produce all of the requested documents, but he did not comply. In September 2010, the other Coexecutor (Feucht) died. In March 2011, the court entered an order finding Edward was in willful violation of the court's discovery order, and imposed "terminating sanctions against Edward[] by striking . . . his First and Final Account."

Two months later, Edward (as prior executor) filed a report seeking the appointment of a successor executor and including a detailed accounting of all estate assets and executor actions from February 2006 until September 2010 (Final Accounting). He requested the court to ratify and approve the accounting and all executor acts. Shortly after, the court appointed an experienced professional successor administrator, Marilyn Kriebel (Administrator), and ordered that she conduct a forensic accounting of the estate transactions during the period covered by Edward's accounting.

In April 2012, the Administrator filed her report concluding the estate transactions had been handled appropriately with two potential exceptions. First, the Administrator noted the court had not yet ruled on the issue whether the CPI stock was "personal property" within the meaning of the Will and therefore whether it was to be distributed

3

solely to Edward or divided among the beneficiaries. The Administrator said the stock had generated approximately $43,557 in income, and if the court finds the shares are not "personal property," Edward will owe that amount with interest to the estate. Second, the Administrator reported that the Coexecutors had not paid estate income taxes for the years 2006 through 2011. The Administrator said she would be filing the delinquent returns and will report to the court regarding the penalties and interest. The Administrator found no merit in Miles's numerous additional challenges to the Coexecutor actions. The Administrator said the complaints concern "real property interests in Texas which are outside the jurisdiction of this court and outside the control or jurisdiction of the administrator of the estate. [And it] has [been] confirmed that Texas treats oil and gas interests as real property interests subject to the jurisdiction of the Texas Courts."

One week later, on April 11, Miles filed a discovery motion seeking the production of numerous categories of documents pertaining to the Administrator's report, including documents related to the value of the CPI shares and income earned from those shares evidenced by accounting statements, board minutes, and internal reports. He also had previously moved for a determination whether the estate had jurisdiction over Mother's Texas property and whether the CPI stock was "personal property" under the Will terms. (Prob. Code, § 11700.)[1]

---

[1]    All statutory references are to the Probate Code, unless otherwise specified.

4

The next month, on May 4, 2012, the court (Judge Julia Kelety) held a hearing on the latter petition regarding the proper disposition of the Texas property and the CPI stock. Edward's attorney and Miles appeared at the hearing. In response to the court's questions, the parties stated they did not wish to present extrinsic evidence on the disposition issues. After providing the parties full opportunity to present argument, the court ruled (1) it had no jurisdiction over the Texas property because it was the subject of an ancillary Texas proceeding; and (2) the CPI stock was "personal property" and was not "money" within the Will terms, and therefore was to be distributed solely to Edward.

The next month, on June 4, the court entered a formal order under section 11705 reflecting these rulings. The court ordered that the estate's 86 shares of CPI stock (as well as other securities) shall be distributed solely to Edward as personal property under Mother's Will. Miles did not appeal from this order.

The next month, on July 6, the court (Judge Jeffrey Bostwick) held a hearing on the estate accounting issues. Attorneys appeared for the Administrator and for Edward. Miles appeared telephonically. At the hearing, Miles stated that although he continues to believe the case "has been a travesty," he no longer objected to the Final Accounting and was prepared to accept the Final Accounting. At the end of the hearing, the court approved the Final Accounting based on the parties' representations that they had no objections.

However, within several weeks, Miles changed his position, and refused to approve an order upholding the Final Accounting. Edward then requested the court approve the Final Accounting as an oral settlement agreement. (Code Civ. Proc.,

5

§ 664.6.) In response, Miles filed a lengthy (39-page) objection to this motion, reasserting numerous objections to the Final Accounting and raising many new issues, including that Edward and his attorney had unlawfully discriminated against him (a military veteran) by referring to him (in a brief filed with the court) as " 'delusional' " and an " 'admitted schizophrenic.' " Miles sought 22 specific remedies from the court.

The next month in August 2013, the court denied Edward's motion for an order under Code of Civil Procedure section 664.6, and vacated its minute order approving the accounting. The court then ordered the Administrator to fully investigate Miles's objections to the Final Accounting, and to report back to the court with her conclusions.

Five months later, in December 2013, the Administrator filed a detailed report on the Final Accounting, and on Miles's objections to this accounting. In the report, the Administrator stated she performed an extensive factual investigation (including the review of numerous identified documents) and found Miles's objections were not supported. She stated the objections fell within several categories: (1) the Texas real property; (2) perceived discrimination; (3) the CPI stock; and (4) tangible personal property distribution.

On the Texas real property issues, the Administrator stated the court did not have jurisdiction over this property, and Miles has been informed of this fact numerous times. The Administrator attached a letter from an attorney with the Texas law firm that handled the Texas probate. The attorney stated Mother's Texas property was the subject of an ancillary probate proceeding and that Mother's interest in the Conley Farm had been distributed under the Will terms as follows: Edward (an undivided one-half interest);

6

Miles (an undivided one-quarter interest); and the remaining to two granddaughters. The Texas attorney also confirmed that all interests in the underlying oil and gas on the property "are interests in real property under Texas law. That is, oil and gas . . . leases actually convey a determinable fee interest under Texas law, and are accordingly also considered to constitute real property" subject to the Texas ancillary probate proceeding.

On the discrimination claim, the Administrator stated Miles had raised two types of discrimination: racial discrimination against his Asian wife and children, and discrimination based on his military-service-related mental health disability. The Administrator said the claimed discrimination against his wife and children was directed primarily at personal conduct by his mother and brother unrelated to the probate action or the accounting. Regarding Miles's mental health discrimination allegations, the Administrator found there was no evidence he had been discriminated against in the probate action.

On the CPI stock issue, the Administrator stated the court in its June 2012 order had already ruled that the CPI stock is "personal property," and therefore Edward is the owner of the stock and is entitled to all the earnings from the stock.

On the tangible personal property issue, Miles claimed Edward acted improperly by distributing Mother's personal belongings without the court's express permission. The Administrator found no prejudicial error: "This administration is now seven (7) years old. Had Edward retained the items in storage in these ensuing seven years the estate would have unnecessarily spent thousands of dollars on storage fees. The items were distributed to the correct recipients and all the receipts have been filed. The distributions

7

resulted in savings to the estate and have no impact whatsoever on Miles since he has no interest in the personal property."

The Administrator concluded:

> "Miles . . . has no valid complaints or objections to the accounting. He is fixated on issues that are not before this court or relevant to this probate proceeding. Edward . . . has done an adequate job of administering the estate under difficult circumstances. Administrator believes the accounting should be approved with the surcharge of $520.00 previously ordered by the Court [for the delinquent taxes]. Administrator further believes that the expense of this investigation should be allocated all toward Miles Kings' share of the estate since the investigation was done on his behalf in an effort to find misfeasance by the prior administrator. . . ."

On December 20, 2013, the court held a hearing on the Final Accounting and Miles's objections. Miles appeared telephonically, and counsel for the Administrator and for Edward appeared at the hearing.

Two months after the hearing, on February 13, 2014, the court issued a written order approving the Final Accounting and rejecting Miles's objections. The court found the estate owned $584,529.64 plus 86 shares of CPI stock, and the Coexecutors had properly performed their statutory duties, except for their failure to pay estate income taxes. The court imposed a $520 surcharge for this failure, but otherwise approved and ratified the Coexecutors' actions. In the order, the court noted it had already issued final rulings on several matters raised by Miles's objections, including the CPI stock ownership, the Texas real property, and the discovery issues.

Miles appeals from this February 13 order.

8

DISCUSSION

## I. *Appellate Rules*

A fundamental rule of appellate review is that an appealed judgment is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) " 'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Ibid.*; see *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) If the judgment or order is correct on any theory, the appellate court will affirm it. (*Estate of Beard* (1999) 71 Cal.App.4th 753, 776-777.)

To overcome this presumption, "a party challenging a judgment has the burden of showing reversible error by an adequate record." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574; see *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141.) In so doing, an appellant must provide supporting citations to the factual record. (See Cal. Rules of Court, rule 8.204(a)(1)(C)[2]; *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239.) An appellant who fails to cite accurately to the record forfeits the issue or argument on appeal that is presented without the record reference. (*City of Lincoln*, at p. 1239.) Likewise, an appellant must "support each point by argument and, if possibl e, by citation of authority." (Rule 8.204(a)(1)(B).) If a party fails to cite authority or present argument, the party forfeits the issue on appeal. (*Estate of Cairns* (2010) 188 Cal.App.4th 937, 949; see *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.)

---

[2] Further rules references are to the California Rules of Court.

Miles did not comply with these rules. His opening brief does not set forth a coherent summary of the relevant facts. (Rule 8.204(a)(2)(C).) His factual assertions are not supported by record citations. He discusses numerous facts outside the appellate record. He does not state his arguments in separate headings as is required by the appellate rules. (Rule 8.204(a)(1)(B).) He does not provide citations to legal authority to support his arguments. He does not develop his legal arguments, or explain a legal and factual basis for the claimed errors.

The fact that Miles is not represented by counsel does not excuse his rule violations. "In propria persona litigants are entitled to the same, but no greater, rights than represented litigants and are presumed to know the [procedural and court] rules." (*Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 795; see *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.) "We are not bound to develop appellants' argument for [an unrepresented litigant]." [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830; see also *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1.)

## II. *Analysis*

Based on Miles's violations of numerous fundamental appellate rules, he has forfeited his appellate challenges. We have nonetheless independently reviewed the record and the parties' appellate briefs to determine whether the court's February 2014 order is legally and factually supported. As explained below, we conclude Miles's contentions are without merit.

A.  *CPI Stock*

Miles devotes a large portion of his appellate briefs to challenging Edward's ownership of Mother's CPI stock and his receipt of income from the stock.  Miles claims that Edward "embezzle[d]" this money from the estate.  He notes that although Edward originally identified the value of the CPI stock as "[n]il," the evidence showed that Edward has earned approximately $43,557 in income from the stock.

This argument lacks merit.

First, the record shows that in June 2012, the court entered an order under section 11705 determining the CPI stock was "personal property" within the meaning of Mother's Will and therefore was properly distributed to Edward under the Will terms.  This order was appealable as a final order determining ownership of estate property.  (§ 1303, subd. (f).)  By failing to appeal from this order, Miles's arguments challenging the court's conclusion are untimely and are not properly before us.  "If a party fails to appeal an appealable order within the prescribed time, [the reviewing] court is without jurisdiction to review that order on a subsequent appeal."  (*In re Marriage of Lloyd* (1997) 55 Cal.App.4th 216, 219; accord *Mauro B. v. Superior Court* (1991) 230 Cal.App.3d 949, 953.)

Further, even if we could reach the issue, Miles has failed to show trial court error.

Mother's Will provided that all (undesignated) personal property items were to be given to Edward and "NO ITEM OF PERSONAL PROPERTY . . . is to go to my son, MILES J. KING.  Personal property . . . does not include money, real property and

11

houses."  The court found that Mother intended the CPI stock to fall within the "personal property" category distributable to Edward.

This conclusion is supported by applicable legal principles.  When construing a written instrument, a court must interpret the words in their ordinary and grammatical sense, unless a different interpretation can be clearly ascertained.  (*Huscher v. Wells Fargo Bank* (2004) 121 Cal.App.4th 956, 972.)  "Stock" and "money" are generally considered to be intangible items of personal property.  (See *Estate of Banerjee* (1978) 21 Cal.3d 527, 537.)  Under common understanding, a bequest of "money" generally means "gold, silver, or paper money used as a circulating medium of exchange," and does not encompass items such as stock, bonds, or other evidence of debt or legal rights.  (*In re Estate of Boyle* (1934) 2 Cal.App.2d 234, 236; see *Estate of Verdisson* (1992) 4 Cal.App.4th 1127, 1138-1139; see also *Estate of Chamberlain* (1941) 46 Cal.App.2d 16, 20.)

By specifically excluding one item of intangible personal property (money) and not excluding another item of intangible personal property (stock), it is reasonable to infer that Mother intended that the stock would be included within the definition of personal property and thus would be given solely to Edward.  This conclusion is also supported by the other Will provisions making clear Mother's intent that Edward (and not Miles) have management and control over the real property assets.  Given this intent, it is not reasonably probable that Mother would have intended to give shares of the CPI stock to Miles.  The CPI entity serves a management function over the Texas real property.

12

Because the probate court properly found Edward was the rightful owner of the CPI stock, it did not err in concluding that the funds earned from those shares were owned by Edward and that Miles had no claim of right to those funds. Miles nonetheless contends the court erred in failing to sanction Edward because Edward improperly paid himself earnings from the CPI stock *before* the court ruled that Edward owned the stock.

The Administrator found that although the preliminary distributions were unauthorized, neither the estate nor any of the beneficiaries (including Miles) suffered any harm from the preliminary distributions because the court later found Edward to be the proper owner of the CPI stock. In response to Miles's claims that the amount of dividends was substantially higher than Edward reported, the Administrator stated it would be "unproductive and imprudent to spend estate resources on determining the [precise] amount of the dividends" because neither the estate nor Miles would benefit from this information. (Boldface omitted.) The Administrator explained that the only individuals who would benefit from this information would be the Administrator and her attorney because any additional amount of income from the stock "would be added to receipts for purpose of calculating the statutory fee."

The court had a reasonable basis to find the Administrator's factual analysis was sound. The court did not err in ruling that Edwards owned the CPI stock and any further court action on the CPI stock was unnecessary and would merely subtract from Miles's share of the estate.

13

B. *Texas Property*

Miles also contends the court erred because it did not order the Administrator to include the Conley Farm and other Texas real property in the estate assets, and/or surcharge Edward for various alleged failings with respect to the Texas property.

As with the CPI stock, this issue is not properly before us because the court ruled it had no jurisdiction over the Texas property in its June 2012 order, and Miles did not appeal from the order. (See *In re Marriage of Lloyd, supra*, 55 Cal.App.4th at p. 219.)

In addition, Miles's contention fails on its merits. Generally, a California probate court does not have jurisdiction over a decedent's real property located in another state; the property is instead subject to the other state's ancillary probate jurisdiction.[3] (See *Conservatorship of Hume* (2006) 139 Cal.App.4th 393, 400 (*Hume*); Ross & Cohen, Cal. Practice Guide: Probate, *supra*, ¶ 14:290, at p. 14-63.) Once the ancillary probate proceeding is completed, the out-of-state administrator may transfer management of the real property assets to the California administrator. But this is the obligation of the ancillary administrator. Because California representatives have no authority over property in other states, an executor is not required to identify the property in the estate inventory or manage those assets. (See § 13103; Ross & Cohen, Cal. Practice Guide: Probate, *supra*, ¶ 14:403, at p. 14-83.)

---

[3]     Certain states have exceptions to this rule, but we have found no basis for an exception here. (See Ross & Cohen, Cal. Practice Guide: Probate (The Rutter Group 2014) ¶ 14:402, p. 14-83.)

14

Miles cites authorities that discuss or apply certain exceptions to this rule. For example, if a California representative takes control over, or possession of, a foreign asset, the California representative may have a duty to identify and properly manage the asset. (See *In re Estate of Ortiz* (1890) 86 Cal. 306, 308-309; *Estate of Barreiro* (1932) 125 Cal.App. 752, 766-767.) Or if the executor becomes aware of foreign assets that are not subject to an ancillary probate jurisdiction, the representative should take appropriate actions to determine whether transfer of the assets is available and/or to ensure the appointment of an ancillary administrator in the foreign state. (See *Hume, supra*, 139 Cal.App.4th at pp. 401-403.)

In this case, the record shows that an ancillary probate proceeding was held in Wise County, Texas regarding Mother's Texas real property assets (the Conley Farm and related real property interests). The evidence showed the Texas probate court distributed these assets according to Mother's Will. Control of the assets was not retransferred to the California estate, and there appeared to be no reason to do so, other than to add to the administration expenses. The real property assets remained in Texas, and were managed by the Texas court during the period of the ancillary administration.

The court properly determined it had no jurisdiction over the Texas assets and had no authority to consider Miles's substantive challenges to the Texas court's orders and/or to actions taken regarding the Texas real property.

C. *Discovery Issues*

.      Without citing to the record, Miles contends the court erred in ruling on his various discovery motions. This argument is waived because Miles does not support his

15

arguments with citations to the record. Moreover, the court had previously ruled in Miles's favor on his requested discovery, and then issued sanctions for Edward's failure to comply with the orders. To the extent Miles now believes these sanctions were not properly enforced or were not sufficiently punitive, these issues were not before the court in its ruling on the Final Accounting. Additionally, there is no showing that the court's rulings on discovery matters had any relevance to the Final Accounting issues. In his discovery motions, Miles sought detailed information regarding the Texas property and the CPI stock. Based on the court's prior rulings, these matters were not material to the issue whether the Final Accounting was proper.

### D. *Claimed Discrimination*

Miles contends the court erred in rejecting his claims that he was unlawfully discriminated against based on a mental health disability and/or the fact that his wife and children are of Asian descent. Miles fails to cite to the record supporting his claims, and on our independent review of the record, we have found no evidence of the claimed discrimination in the probate proceedings. Miles cites to the fact that Edward's attorney characterized him in a false and unflattering manner (" 'delusional' " and " 'schizophrenic' ") in one of his briefs. However, this does not show Miles was discriminated against or treated unfairly *by the court*. Moreover, Edward was no longer an executor of Mother's estate when this brief was filed. Additionally, contrary to Miles's claims, there is no showing on the record that the court or the parties violated his rights under the Americans with Disabilities Act. There is also no evidence to support Miles's

16

argument that "as a disabled *pro per* beneficiary [he] was held to a higher standard of care than an attorney."

We have reviewed the entire appellate record, and are satisfied that the judicial officers who presided over this lengthy probate proceeding exhibited commendable patience and allowed Miles a full and fair opportunity to present his objections and to argue his points repeatedly and at length—both in writing and orally.

### E. *Additional Contentions*

Miles asserts numerous additional contentions, primarily concerning matters that occurred long before the court ruled on the Final Accounting. Because they do not concern the order appealed from, they are not matters properly before us on this appeal. We have also considered each of Miles's additional objections to the Final Accounting, and have found these contentions to be without any factual and/or legal merit. Under the circumstances, there is no need to address each of these contentions in this opinion. (See *Linhart v. Nelson* (1976) 18 Cal.3d 641, 645 ["Having examined [appellants'] other contentions, we find them of insufficient merit to warrant discussion."].)

Miles additionally raises several contentions for the first time in his reply brief. We decline to consider these assertions for "[o]bvious reasons of fairness." (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10; accord *Holmes v. Petrovich Development Co., LLC* (2011) 191 Cal.App.4th 1047, 1074.) Arguments raised for the first time in a reply brief are forfeited. (*Wurzl v. Holloway* (1996) 46 Cal.App.4th 1740, 1754, fn. 1.)

## DISPOSITION

Order affirmed.  Appellant to bear respondents' costs on appeal.


                                                                    HALLER, J.

WE CONCUR:


HUFFMAN, Acting P.J.


NARES, J.